[Crim. No. 10028. In Bank. Mar. 22, 1967.]

THE PEOPLE, Plaintiff and Respondent, v. ROBERT
EDWARD KELLEY, Defendant and Appellant.

Harry Ellman for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Gerald H. Genard, Deputy Attorney General, for Plaintiff and Respondent.

PETERS, J.—Defendant appeals from an order granting probation after convictions of violations of sections 288 and 288a of the Penal Code (lewd or lascivious act against a child under the age of 14 and sex perversion).

Defendant, while at home on leave from the Navy in January of 1964, resided with his wife and 8-year-old stepson David. David testified that one night while his mother was absent from the house, defendant came into his bedroom and copulated his mouth with David's penis after handling David's penis with his hands, and that upon defendant's request, David masturbated defendant but refused to copulate him. He also testified that defendant promised him a particular type watch if he would not tell anyone what happened, and that he did not say anything to his mother until October 16, 1964, after defendant had failed to bring home the kind of watch promised.

Defendant's wife testified that when she told defendant in October what David had said, defendant ''seemed shocked'' and did not reply, and that two days later he said in a telephone conversation, ''I believe Davie. This must have happened, but I know I do have blackouts and do not remember it.'' She thereafter related these events to Officer Morse of the San Diego Police Department.

Officer Morse testified that at approximately 8:45 a.m. on December 10, 1964, he spoke to defendant at the security office of the San Diego Naval Station where defendant was then stationed, and that he told defendant ''that he didn't have to make any statement *to me* regarding the case that I was inquiring about, that anything that he said could be used against him in court, and that he was entitled to an attorney now and at any time *that I talked to him.*'' (Italics added.) When he told defendant that he had been accused of sexually molesting his stepson, defendant said, according to the officer, that he drank considerably and often blacked out and that it was possible he could have done it but that he could not recall having done so.

At 9:30 the same morning, after Officer Morse had departed, Charles Kerr, who was employed by the San Diego Naval Station as a criminal investigator, interviewed defendant in Kerr's office at the Naval Station. Kerr testified that he informed defendant that he was accused of sodomy in violation of the Uniform Code of Military Justice, that he had the right to remain silent, that he could not be compelled to answer any questions that might incriminate him, and that anything he

said orally or in writing could be used against him in a court martial. Nothing was said about the right to counsel. Defendant read and signed a form containing the provisions of 9 Uniform Laws Annotated section 602 which provides that every accused shall be informed of his privilege against self-incrimination but is silent concerning the right to counsel.[1]

Kerr testified that during the course of the interrogation which lasted nearly four hours defendant made statements the substance of which Kerr dictated into a recording machine. The recording was reduced to writing and read and signed by defendant later that morning. In that statement defendant confessed to having committed the acts with David and also admitted certain prior sexual activities with other people. In the latter connection, it is stated that when defendant was in the Navy in 1940 (24 years previously at age 19) he accepted a ride from a man and was taken to his apartment, that the man committed an oral act upon him, and that defendant became sick and did not himself participate orally. The statement also disclosed that defendant was taught how to perform acts of oral copulation by his first wife and participated in such acts with his first wife from 1943 to 1945 and with his second wife, David's mother, from 1952 to 1964.

A hearing in reference to the admissibility of the Kerr statement was held out of the presence of the jury. Kerr testified that he did not inform defendant that he had a right to counsel, that although defendant did request to use and did use the telephone once, he did not request to use the telephone to call an attorney, and that defendant was not under arrest and was free to leave at any time during the examination. Defendant testified that he requested permission to call his attorney to cancel an appointment scheduled for that afternoon relating to his pending divorce and to consult with him regarding the present interrogation, that Kerr refused such permission but allowed him to make a call canceling a dental appointment, and that although he was told he was not in custody, he

---

[1]The relevant part of section 602 (9 U.L.A.) provides as follows:

"(a) No person subject to this code may compel any person to incriminate himself or to answer any question the answer to which may tend to incriminate him.

"(b) No person subject to this code shall interrogate, or request any statement from, an accused or a person suspected of an offense without first informing him of the nature of the accusation and advising him that he does not have to make any statement regarding the offense of which he is accused or suspected and that any statement made by him may be used as evidence against him in a trial by court-martial."

requested and was refused permission to leave. Upon being asked by the judge whether he was aware that he was entitled to talk to an attorney, defendant answered that he was but that Kerr would not let him. The defense introduced portions of the transcript of the prior trial in which Kerr had stated that he was unable to remember whether defendant requested an attorney. The judge ruled that the entire statement was admissible, and it was introduced over defendant's objections as part of the prosecution's case in chief.

Defendant testified in his own behalf and denied having committed the acts with David. He stated that he had signed the statement so that he would be permitted to leave and keep the appointment with his attorney; he denied having committed any of the acts contained in the statement.

This is the second trial of defendant for the same acts. In the first trial the court admitted the confession as to the acts charged but excluded the parts relating to the admission of prior crimes. The jury was unable to agree on a verdict in that trial. As already indicated, the entire statement was admitted in this trial, and defendant was convicted.

Defendant urges that those portions of the Kerr statement relating to the admission of the commission of other crimes were inadmissible, and that their admission was prejudicial. It is also contended that the entire statement given to Kerr was inadmissible because secured in violation of the rules announced in *Escobedo* v. *Illinois*, 378 U.S. 478 [12 L.Ed.2d 977, 84 S.Ct. 1758]. A contention is also made that the testimony given by defendant's wife falls within the spousal privilege, and should have been excluded.

So far as the first contention is concerned, we are of the opinion that the admission of the evidence showing the commission of other sex offenses was error, and that such error was prejudicial and requires a reversal.

■ The general rule is that evidence of other crimes is inadmissible when it is offered solely to prove criminal disposition or propensity on the part of the accused to commit the crime charged, because the probative value of such evidence is outweighed by its prejudicial effect. (*People* v. *Westek*, 31 Cal.2d 469, 476 [190 P.2d 9]; *People* v. *Dabb*, 32 Cal.2d 491, 499-500 [197 P.2d 1]; *People* v. *Peete*, 28 Cal.2d 306, 314-315 [169 P.2d 924]; *People* v. *Albertson*, 23 Cal.2d 550, 576 [145 P.2d 7].) ■ The purpose of the rule is to avoid placing the accused in a position of having to defend against crimes for which he has not been charged and to guard against the

probability that evidence of other criminal acts having little bearing on the question whether defendant actually committed the crime charged would assume undue proportions and unnecessarily prejudice defendant in the minds of the jury, as well as promote judicial efficiency by restricting proof of extraneous crimes. (*People* v. *Albertson, supra,* at pp. 577-578; *People* v. *Sykes,* 44 Cal.2d 166, 173, 174-175 [280 P.2d 769], dissenting opinion of Traynor, J.; *People* v. *Molineux,* 168 N.Y. 264, 291-293 [61 N.E. 182, 62 L.R.A. 193].)

However, under certain limited circumstances, when the evidence is sufficiently relevant, it may be admitted even though it embraces evidence of the commission of another crime. In *People* v. *Peete, supra,* 28 Cal.2d 306, this court pointed out that "except when it shows merely criminal disposition [citations], evidence that is relevant is not excluded because it reveals the commission of an offense other than that charged," and noted that the general test of admissibility of evidence in a criminal case is whether it tends logically, naturally, and by reasonable inference, to establish any fact material for the People or to overcome any material matter sought to be proved by the defense. (28 Cal.2d at pp. 314-315.) It has frequently been recognized, however, that because of the sound reasons behind the general rule of exclusion, the relevancy of evidence of other crimes, and therefore its admissibility, must be examined with care. (*People* v. *Peete, supra,* 28 Cal.2d 306, 316.) ▉ The evidence should be received with "extreme caution," and if its connection with the crime charged is not clearly perceived, the doubt should be resolved in favor of the accused. (*People* v. *Albertson, supra,* 23 Cal.2d 550, 577; *People* v. *Sykes, supra,* 44 Cal.2d 166, 175, dissenting opinion.) ▉ In every case the possibility of severing relevant from irrelevant portions of evidence should be considered to protect the accused from undue prejudice. (*People* v. *Dabb, supra,* 32 Cal.2d 491, 500.)

In determining the question of relevancy, certain guidelines have been recognized. ▉ It is settled that evidence of other crimes is ordinarily admissible where it tends to show guilty knowledge, motive, intent, or presence of a common design or plan. (*People* v. *Westek, supra,* 31 Cal.2d 469, 480; 18 Cal.Jur.2d, Evidence, § 138, p. 588; 22A C.J.S., Criminal Law, §§ 683-689, pp. 741-791.)[2]

---

[2] In addition, proof of similar prior criminal acts is admissible where, unlike the instant case in which the evidence was presented as part of the prosecution's case in chief, it is offered in rebuttal as bearing on de-

The trial judge in the instant case instructed the jury that they could consider the prior crimes in determining whether defendant had a motive, a plan, or the intent necessary for the commission of the crimes charged. It is obvious that offenses such as these, so remote and dissimilar to the crimes charged, are not relevant as showing either a motive or a similar design or plan (compare *People* v. *Cook*, 148 Cal. 334, 339-340 [83 P. 43]; *People* v. *Peete, supra*, 28 Cal.2d 306, 317), and the Attorney General does not so contend. He urges, however, that they were relevant to show that defendant entertained the requisite intent for commission of the offenses charged.[3]

The law in California with respect to the admissibility of the commission of other sex offenses to prove intent is not altogether clear.

On one hand, it has often been stated that great care should be exercised in the admission of evidence of prior sex crimes because charges of sex offenses are often unreliable and particularly difficult to disprove. (*People* v. *Huston*, 45 Cal.App. 2d 596, 597-598 [114 P.2d 607]; *People* v. *Asavis*, 22 Cal.App. 2d 492, 496 [71 P.2d 307]; cf. *People* v. *Anthony*, 185 Cal. 152, 160 [196 P. 47].) On the other hand, we have held that, in cases involving sex crimes, evidence of other not too remote sex offenses *with the prosecuting witness* is admissible to show a lewd disposition or the intent of defendant *towards the prosecuting witness*. (*People* v. *Sylvia*, 54 Cal.2d 115, 119-120 [4 Cal.Rptr. 509, 351 P.2d 781].)

Although this court has not directly decided whether it is proper to admit evidence of sex offenses committed with persons other than the prosecuting witness,[4] some Courts of Appeal have announced that such evidence is inadmissible, and this is probably the rule in some other jurisdictions. (See *People* v. *Buchel*, 141 Cal.App.2d 91, 98 [296 P.2d 113]; *Peo-*

fendant's credibility, after he has taken the stand and denied any prior acts of the type charged. (*People* v. *Westek, supra*, 31 Cal.2d 469, 476.)

[3]Pen. Code § 288 punishes those who "wilfully and lewdly commit any lewd or lascivious act . . . upon or with the body, or any part or member thereof, of a child under the age of fourteen years, with the intent of arousing, appealing to, or gratifying the lust or passions or sexual desires of such person or of such child. . . ." To violate section 288a of the Pen. Code, one must intend to participate "in an act of copulating the mouth of one person with the sexual organ of another."

[4]This court has held it to be prejudicial misconduct for the district attorney in a 288 prosecution to ask the defendant if he had not committed prior sexual acts with girls of ages similar to that of the prosecuting witness when no evidence of such acts had been shown. (*People* v. *Anthony, supra*, 185 Cal. 152.)

*ple* v. *Huston, supra,* 45 Cal.App.2d 596, 597; *People* v. *Rogers,* 26 Cal.App.2d 371, 373 [79 P.2d 404]; *People* v. *Asavis, supra,* 22 Cal.App.2d 492, 494; Witkin, Cal. Evidence (1958) § 136, p. 159; 22A C.J.S., Criminal Law, § 691(35), pp. 883, 884.) *People* v. *Buchel, supra,* 141 Cal.App.2d 91, involved a charge of committing acts in violation of section 288 upon defendant's 13-year-old son. The court held inadmissible the testimony of defendant's two daughters that defendant had committed acts of oral copulation and forcible rape against them, relying on the general rule that in 288 cases evidence that defendant has participated in similar acts with persons other than the prosecuting witness is inadmissible. ''While it is true that in this state the trend of decision has been to allow evidence of other crimes generally to show guilty knowledge, motive, intent or a common scheme or plan [citation], it is also true that in cases involving lewdness, the rule that evidence of other crimes is not admissible has not been relaxed.'' (141 Cal.App.2d at p. 98.)

It has been held, however, that when the defendant in testifying in his own behalf acknowledges the physical touching of the child but asserts his innocent intent, thereby definitely placing in issue the necessary element of intent, the prosecution may then introduce evidence that defendant has committed similar offenses upon persons other than the prosecuting witness in order to rebut the testimony of the defendant on a point material to the establishment of his guilt of the crime charged. (*People* v. *Westek, supra,* 31 Cal.2d 469, 480-481; see also, *People* v. *Honaker,* 205 Cal.App.2d 243, 245 [22 Cal.Rptr. 829].)

There seems to be a trend in recent 288 cases to admit evidence of not too remote offenses which are of a character similar to the offense charged and are performed with persons similar to the prosecuting witness on the theory, *inter alia,* that it is relevant to proving intent even though the defendant has not admitted touching the prosecuting witness and has not otherwise specifically placed the element of intent in issue. Thus, in *People* v. *Malloy,* 199 Cal.App.2d 219 [18 Cal. Rptr. 545] (hearing den.), a playground director was prosecuted under section 288 for acts upon boys from ages 12 to 13 committed in unusual ways during a weekend trip to his cabin. The court approved admission as part of the prosecution's case in chief of testimony of another boy 14 years old that he and six other boys had taken a similar trip to defendant's cabin where they had performed the same unusual acts.

The court stated that the testimony was admissible as tending to prove the specific intent required by section 288, which had been put in issue by defendant's plea of not guilty, but noted that a more compelling basis for admission was that the testimony showed a common plan or design to commit crimes in the particular manner involved. The court disapproved the apparent holdings in *Buchel* and in the cases there cited to the effect that in 288 cases evidence of offenses with others is inadmissible despite its relevance in showing motive, intent, plan, or the other well-defined exceptions. (199 Cal.App.2d at pp. 232-233.) There is also language in *People* v. *Honaker, supra,* 205 Cal.App.2d 243, 244, to the effect that evidence of other section 288 offenses is admissible under the intent exception whenever intent is placed in issue by a not guilty plea.

In an even more recent case, however, evidence of offenses with others in violation of section 288 has been held inadmissible though the offenses were similar in nature to the crime charged. In *People* v. *Baskett,* 237 Cal.App.2d 712 [47 Cal. Rptr. 274] (hearing den.), defendant was charged with sexually molesting his 13-year-old granddaughter, who at the time was being raised by defendant and his wife. Witnesses for the defense testified that there was a birthday party in defendant's house at the time of the alleged offense, and defendant's stepdaughter testified that defendant never got "out of line" while she was staying at his house. In rebuttal, defendant's two daughters were permitted to testify that when they were of a similar age defendant performed similar acts upon them. The Court of Appeal disapproved the language in *Malloy* which suggested that prior sex crimes are admissible whenever defendant places his intent in issue by pleading not guilty and held that admission of the testimony of the two daughters was prejudicial error. (237 Cal.App.2d at p. 717.)

These cases indicate that there seems to be some confusion as to when and under what circumstances evidence of the commission of sex offenses with others is admissible. It is clear that the traditional exceptions of motive, intent, etc., apply to cases involving sex offenses, and general language to the contrary in *Buchel* and in cases upon which it relies is disapproved. (*People* v. *Westek, supra,* 31 Cal.2d 469, 480 ; see *People* v. *Sylvia, supra,* 54 Cal.2d 115, 119-120.) It is not and should not be the law, however, that defendant's not guilty plea places his intent in issue so that proof of sex offenses with others is *always* admissible. Such evidence is admissible in cases where the proof of defendant's intent is

ambiguous, as when he admits the acts and denies the necessary intent because of mistake or accident. (*People* v. *Westek, supra,* 31 Cal.2d 469, 480-481; *People* v. *Honaker, supra,* 205 Cal.App.2d 243.) But where the acts, if committed, indisputably show an evil intent and the defendant does not specifically raise the issue of intent, the better reasoned cases hold that evidence of other crimes is admissible only when they were performed with the prosecuting witness (*People* v. *Sylvia, supra,* 54 Cal.2d 115), or where the offenses are not too remote and are similar to the offense charged and are committed with persons similar to the prosecuting witness. ■ Then they are admissible as showing a common scheme or plan. (*People* v. *Malloy, supra,* 199 Cal.App.2d 219; *People* v. *Honaker, supra,* 205 Cal.App.2d 243.)[5]

■ It is argued that the other offenses in the instant case were admissible to show that defendant obtained gratification of his passions through oral copulation and to infer therefrom that defendant had the intent required for the commission of the crime charged.[6] If this were the rule, the common plan or design exception would be meaningless. Evidence of *any* 288a violation could be introduced in *any* 288a prosecution, and evidence of any other particular offense such as theft or possession of marijuana would be admissible in a prosecution for that offense as showing that defendant had the disposition to commit that particular crime. Such is not and should not become the law. Evidence of other crimes is inadmissible "where it is offered solely to prove criminal disposition or propensity on the part of the accused *to commit the crime charged.* . . ." (Italics added.) (*People* v. *Westek, supra,* 31 Cal.2d 469, 476; *People* v. *Lapin,* 138 Cal.App.2d 251 [291

[5]The holding in *People* v. *Baskett, supra,* 237 Cal.App.2d at page 717, that the common plan exception in sex cases is limited to proof of identity, is too restrictive and is disapproved.

[6]The Attorney General argues that the other offenses were also introduced to controvert the language in defendant's confession indicating that he was only seeking to determine whether David had had prior sex experience and was not seeking sexual gratification. This contention is clearly without merit. Defendant's detailed confession of his acts with David unequivocally shows that he was intent upon gratifying his sexual desires.

Nor does it appear that his statements that he drank considerably, often blacked out, and could not recall the acts charged placed his intent in issue so as to justify the admission of the prior offenses. These extrajudicial statements pertained to the commission of the acts themselves rather than to the intent with which they were performed, and, in any event, were not presented by the defense but as part of the prosecution's case in chief.

P.2d 575] [holding that in a prosecution for possession of marijuana evidence of a prior conviction of possession is not admissible as showing intent or disposition to possess marijuana] ; see Note (1951) 39 Cal.L.Rev. 584; Comment (1960) 7 U.C.L.A. L.Rev. 463.) Language in *Malloy* and *Honaker* to the effect that a not guilty plea automatically makes the intent exception applicable should be and is disapproved.

The Attorney General urges that the evidence of other offenses was admissible because proof of specific intent is required by section 288, and in this connection relies upon the following language in *People* v. *Coltrin*, 5 Cal.2d 649, 656 [55 P.2d 1161] : ''It is well settled that where an offense is of such a nature that proof of the act with which the defendant is charged is not in itself proof of the required criminal intent and where additional proof of such intent is necessary to prove the crime charged, evidence of other offenses of a similar nature committed by the defendant is admissible for the purpose of proving intent.''

This statement must be considered in light of the facts there involved. It was a prosecution for abortion. Defendant specifically placed his intent in issue by admitting performance of the acts upon the victim but denied they were done with the intent of procuring a miscarriage. The court relied upon *People* v. *Morani*, 196 Cal. 154 [236 P. 135], which involved similar facts and held only that evidence of other abortions is admissible '' 'whenever it appears that the defendant claims that the operation was innocently performed and for a lawful purpose.' '' (196 Cal. at p. 160.) ██ It is not the law that other offenses are admissible whenever a specific intent is required to be proved. Such a rule should particularly be avoided in 288 cases where evidence of the lewd and lascivious acts themselves normally carry a strong inference that they were done with the specific intent of arousing sexual desires.

██ Moreover, in the present case, the other offenses here involved are not, as required by *Coltrin* and as existed in *Malloy* and *Honaker*, ''of a similar nature'' to the crime charged. The prior offenses were committed with consenting adults and with persons quite dissimilar to the prosecuting witness and involved distinctly different conduct on the part of the defendant. The experience with the man 24 years ago, in addition to being too remote in time to have any reasonable bearing on the act charged, did not involve oral conduct on the part of the defendant, and the experience with his wives, occurring between consenting adults of the opposite sex in the

privacy of the marriage bed, certainly cannot be relevant enough to the seduction of an 8-year-old boy to outweigh its prejudicial effect upon the jury.

Thus, the jury was permitted to consider evidence of violations of section 288a that had little or no relevance in showing that defendant committed the crime charged.[7] That such error was prejudicial is clear. Not only is the prejudicial nature of the erroneously admitted evidence obvious, but it is also the fact that at the first trial when such evidence was excluded the jury was unable to agree but at this trial when the evidence was admitted a unanimous verdict resulted. The two trials being otherwise substantially similar, such fact demonstrates almost to a certainty the prejudicial nature of the error.

As already pointed out, defendant also urges that the entire statement given Kerr was inadmissible as having been obtained in violation of his right to counsel under *Escobedo* and *Dorado*. (The rules of those cases apply to this appeal.) (*People* v. *Rollins,* 65 Cal.2d 681 [56 Cal.Rptr. 293, 423 P.2d 221].) The rule is that a confession is inadmissible when at the time it is obtained (1) the investigation no longer is a general inquiry into an unsolved crime but has begun to focus on a particular suspect, (2) the suspect is in custody, (3) the authorities have carried out a process of interrogations that lends itself to eliciting incriminating statements, and (4) the authorities have not effectively informed defendant of his right to counsel or of his absolute right to remain silent, and no evidence establishes that he has waived these rights. (*People* v. *Dorado,* 62 Cal.2d 338, 353-354 [42 Cal. Rptr. 169, 398 P.2d 361]; *People* v. *Stewart,* 62 Cal.2d 571 [43 Cal.Rptr. 201, 400 P.2d 97], affd. *sub nom. Miranda* v. *Arizona,* 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974].)

 In the present case it is obvious that the investiga-

---

[7]The only evidence of the prior crimes was defendant's extrajudicial admissions. It is settled that an extrajudicial admission of the crime charged is inadmissible in absence of independent proof of the corpus delicti (*People* v. *Cullen,* 37 Cal.2d 614, 624 [234 P.2d 1]) and we have held that an extrajudicial admission of prior crimes in a penalty trial is likewise inadmissible without proof *aliunde* that such crimes have been committed (*People* v. *Hamilton,* 60 Cal.2d 105, 129-131 [32 Cal.Rptr. 4, 383 P.2d 412]). When, however, as in the present case, evidence of prior criminal conduct is used inferentially to establish some element of the crime charged, it is apparently allowed to be shown by extrajudicial admissions of defendant alone without corroborating evidence. (See *People* v. *Zatzke,* 33 Cal.2d 480 [202 P.2d 1009].)

tion had begun to focus on defendant and that Kerr carried out a process of interrogations that lent itself to eliciting incriminating statements. Kerr had acquired a copy of the complaint against defendant from the San Diego Police Department, and he testified that the interrogation, which lasted nearly four hours, was for the specific purpose of gathering information useful in a court martial proceeding on a charge of sodomy: To say the least, the prosecution did not meet its burden of showing that the statement was the result of something other than a process of interrogation that lent itself to eliciting incriminating statements. (*People* v. *Stockman,* 63 Cal.2d 494, 498-499 [47 Cal.Rptr. 365, 407 P.2d 277].)

But was defendant in custody? We think he was. Kerr testified that defendant was not under arrest, but an arrest is not essential to the maturing of the accusatory stage. ''Rather, in determining whether such stage has been reached, all of the cricumstances must be considered, including such factors as the evidence of guilt in the possession of the police, the pressures short of arrest which the police exert to detain the suspect, and other factors which may subject the suspect to unusual pressures.'' (*People* v. *Furnish,* 63 Cal.2d 511, 516 [47 Cal.Rptr. 387, 407 P.2d 299].)

The most significant factor involved in the instant case is that before and during the questioning defendant was in the Navy and subject at all times to military regulations and to the orders of his superiors. According to defendant's testimony, which is not contradicted, he was first told to report to a Mr. Keady at the Naval Security Building who said, ''Just stick around for a while, we want to talk to you.'' He was then interrogated by Officer Morse, the county police officer, who also told him to ''hang around'' for a talk with Kerr. Although Kerr testified that defendant was not in custody and was free to leave, he admitted that he did not inform defendant of this fact. The existence of custody as an element of the accusatory stage does not depend on the subjective intent of the interrogator but upon whether defendant is placed in a situation in which he reasonably believes that his freedom of movement is restricted by pressures of official authority. An examination of *Escobedo* and *Dorado* demonstrates that these cases condemned the confession or incriminatory statement given by a defendant under the coercive circumstance of an actual *or apprehended* restriction upon his freedom of movement. Defendant was a member of the military and it appears that he was ordered to report for

the interrogation. No one told him he could leave, and, in fact, he made a call during the interrogation to cancel an 11 a.m. dental appointment. Under such circumstances, defendant reasonably believed that he was restrained by military authority.

The Attorney General next contends that defendant waived his right to counsel. As stated in *People* v. *Stewart*, *supra*, 62 Cal.2d 571, 581, ''in order to establish a waiver of the right to the assistance of counsel the record must indicate that the defendant was advised of his right to counsel and to remain silent or that he knew of thsese rights and intelligently and knowingly waived them.'' The burden of establishing such waiver is on the prosecution. (*People* v. *Lilliock*, 62 Cal. 2d 618, 621-622 [43 Cal.Rptr. 699, 401 P.2d 4].)

 Defendant was not adequately advised of his right to counsel with respect to the interrogation by Kerr. Kerr testified that he advised defendant of his right to remain silent but not of his right to counsel. This warning was insufficient. (*People* v. *Stockman*, *supra*, 63 Cal.2d 494, 499-500.)

 The warning by Officer Morse did not apply to the subsequent interrogation by Kerr. Morse testified that he told defendant that he did not have to make any statement ''to me'' and that he was entitled to an attorney ''now and at any time that I talked to him.'' In addition, although the examinations were conducted the same morning, they were distinct proceedings governed by separate rules, and defendant knew this. The first was conducted by a county official with recognition of the full panoply of constitutional rights of the accused. The second was undertaken upon the authority of the defendant's military superiors and did not afford the same constitutional rights to the accused. The Court of Military Appeals has recently held that an accused need not be advised of the right to counsel during pretrial interrogations (*United States* v. *Wimberley*, 16 U.S.C.M.A. 3, 36 C.M.R. 159), and in view of the prevailing opinion that the Sixth Amendment right to counsel does not apply to the military accused, it is at least uncertain whether the military accused has the right to consult with counsel during such interrogation even when he requests counsel. (See generally, Comment, *Investigative Procedures in the Military: A Search for Absolutes* (1963) 53 Cal.L.Rev. 878, 894-897.) It would therefore be reasonable for defendant to assume, as he evidently did, that the advice concerning the right to counsel by Officer Morse did not apply to

interrogations by military authority for purposes of military discipline.

The Attorney General urges that such advice was unnecessary because defendant already knew of his right to counsel. ▮ The only evidence of such prior knowledge is contained in defendant's response to a question by the court as to whether he was aware that he was entitled to talk to an attorney about the interrogation. Defendant replied, "Yes, sir. And when I asked Mr. Kerr, he wouldn't let me." The knowledge required to establish a waiver is not the mere belief that a right to counsel exists in the abstract, but an awareness on the part of the accused that counsel requested at that time can actually be obtained. If defendant's affirmative answer were interpreted as referring to such awareness, it would then be in direct conflict with his subsequent statement that he was not allowed to call his attorney. This statement is insufficient to meet the prosecution's burden of showing a knowing and intelligent waiver of the right to counsel. (*Carnley* v. *Cochran*, 369 U.S. 506, 516 [8 L.Ed.2d 70, 82 S.Ct. 884]; *People* v. *Mathis*, 63 Cal.2d 416, 432 [46 Cal.Rptr. 785, 406 P.2d 65].) It appears therefore that had the confession to Kerr been obtained by authorities of this state, its admission would be prejudicial error and require a reversal since it was given after the accusatory stage had arisen and when defendant had not waived his right to counsel.[8]

▮ It is urged, however, that the Kerr confession, even if inadmissible under state law, was admissible under military law, and therefore under the so-called "silver platter" doctrine was admissible in this state. That doctrine is that evidence lawfully secured in one jurisdiction is admissible in other jurisdictions even though under local law it would be inadmissible. The argument goes that under military law a warning of the right to counsel was not required; that all warnings required to be given by military law were given by Kerr; that Kerr lawfully secured the confession under military law; that therefore it is admissible in California even though illegally secured under our law.

---

[8]Defendant was adequately advised of his rights with respect to the interrogation by Officer Morse and no contention is made to the contrary. It is clear, however, that the full confession given Kerr was not merely cumulative to these exculpatory statements such as to render the admission of the confession to Kerr nonprejudicial. The admission of a confession obtained in violation of *Escobedo* requires reversal even though other evidence is sufficient to support the conviction, "at least when the admissible evidence does not include an equally damaging confession." (*People* v. *Price*, 63 Cal.2d 370, 377 [46 Cal.Rptr. 775, 406 P.2d 55].)

This argument involves several basic premises. First, are the rules of *Escobedo,* as to the right of counsel, applicable in military tribunals? Certainly the Uniform Code of Military Justice (9 U.L.A. § 602) does not require that an accused be informed of his right to counsel. In an early case it was stated that all of the guarantees of the Bill of Rights do not apply to the military. (*Ex parte Milligan,* 71 U.S. 2 [18 L.Ed. 281].) It has been stated that the military law is itself due process. (*Reaves* v. *Ainsworth,* 219 U.S. 296, 304 [55 L.Ed. 225, 31 S.Ct. 230].) But it appears that under military law there are some minimal requirements of due process. (*Application of Stapley,* 246 F.Supp. 316, 321.) It has been held that an accused has the right to counsel in a precourt-martial interrogation if he requests counsel (*United States* v. *Gunnells,* 8 U.S.C.M.A. 130; see also 53 Cal.L.Rev. 878, 894) but it has been held that no attorney need be provided or offered if none is requested. (*United States* v. *Wimberley, supra,* 16 U.S.C.M.A. 3, 10, 36 C.M.R. 159, 166.)

If it be assumed that when this confession was secured by the military it was lawfully secured, should it be admissible when offered in a California court where it would be inadmissible if secured here? The solution of this problem is not entirely free from doubt.

Frequently the case of *Elkins* v. *United States,* 364 U.S. 206, 223 [4 L.Ed.2d 1669, 80 S.Ct. 1437], is cited to indicate that the United States Supreme Court has abandoned the "silver platter" doctrine. This is true only in a limited sense. *Elkins* was decided before *Mapp* v. *Ohio,* 367 U.S. 643 [6 L.Ed.2d 1081, 81 S.Ct. 1684, 84 A.L.R.2d 933], but after *Wolf* v. *Colorado,* 338 U.S. 25 [93 L.Ed. 1782, 69 S.Ct. 1359]. It was held in *Elkins* that the fruits of a search by state officers, admissible under state law, would *not* be admissible in a federal prosecution — thus refusing to apply the "silver platter" doctrine. But that case turned upon the fact that under *Wolf* v. *Colorado, supra,* it had been held that the search was unlawful in the states, but the court had not yet held the fruits of such illegal search were not admissible under state law. Nevertheless the Fourth and Fourteenth Amendments were being violated. Thus the case stands only for the proposition that the "silver platter" doctrine cannot be used to violate the Fourth and Fourteenth Amendments.

It is generally stated that the "silver platter" doctrine is still the law where the procedures used were constitutional in

the jurisdiction where the evidence was obtained. (*United States* v. *Coppola,* 281 F.2d 340, 345; *United States* v. *Grisby,* 335 F.2d 652, 656.) In this last case, involving a lawful search of military barracks, the court stated: "If the search was valid as a matter of military law when made, it was valid for all purposes, and admission of the fruits of the search ought not to be dependent upon the jurisdiction in which the subsequent trial is had." This case presents a factual situation somewhat similar to the one here involved. It is based on the theory that the basis of the exclusionary rule is to deter the police from unlawful action by removing the incentive to disregard it. (See *Elkins* v. *United States, supra,* 364 U.S. 206, 217.) Where officials have secured evidence under procedures valid in their jurisdiction no deterrent purpose would be served by excluding the evidence when offered in another jurisdiction. Based on this theory, it can be argued that exclusion of the parts of the confession not dealing with prior crimes would accomplish no substantial purpose and would result in the loss of valuable, reliable, and relevant evidence. (But see *People* v. *Rodriguez,* 242 Cal.App.2d 744 [51 Cal. Rptr. 873], where the *Grisby* case was limited.)

The solution to this problem turns upon the nature of the rights protected by the *Escobedo* rules. There is little doubt that if the evidence, even if validly secured, were secured by means that shock the conscience, or in violation of a fundamental constitutional right, it would not be admissible in a jurisdiction excluding it for these reasons. That is what is told us by the *Elkins* case. The real question is the nature of the rights protected by *Escobedo.* One of the important purposes of the rules announced in that case was that it was necessary to deter improper police practices (*In re Lopez,* 62 Cal.2d 368, 372-373 [42 Cal.Rptr. 188, 398 P.2d 380]) that might lead to involuntary confessions. (*Johnson* v. *New Jersey,* 384 U.S. 719, 729-730 [16 L.Ed.2d 882, 86 S.Ct. 1772]. See *People* v. *Rollins, supra,* 65 Cal.2d 681.) But it cannot be denied that the whole series of cases—*Escobedo, Lopez, Dorado, Miranda, Johnson,* and *Rollins,* and their numerous progeny—was fundamentally aimed at protecting the Fifth and Sixth Amendment rights of the accused, that is, to protect against self-incrimination and to protect the right to counsel. These are, of course, fundamental constitutional rights. Thus the *Elkins* rule is applicable.

The most recent case to come to our attention supports this view. In *United States* v. *Miller* (D.Del.) 261 F.Supp. 442,

military policemen apprehended the accused, an airman, while he was in possession of a stolen automobile and took him to the military headquarters of the air police for questioning. He was there interrogated and signed a statement inculpating himself. As in the instant case he was not notified of his right to counsel, nor, unlike the present case, was he warned of his right to remain silent. He was tried in a civilian court. It was held that the statement was not admissible.

The court first recognized that persons in the military do not have all the constitutional rights of civilians. 35 U.S.L. Week 2359, summarizes the court's holding as follows: ''The doctrine exalting military efficiency above individual liberty is rooted in cases considering habeas corpus petitions that sought the petitioner's release from confinement imposed by courts-martial. The present case is distinguishable. The person whose rights were allegedly invaded is a military man. The conduct complained of is that of military authorities and an FBI agent summoned by the military. But here the military authorities have chosen to invoke the criminal jurisdiction of the civilian courts. Thus the case is altogether different from those in which military courts are meting out military justice to military personnel.

''The argument that the Fourth and Fifth Amendments have no application to the search and interrogation here conducted must be rejected. It represents an attempt to extend the sphere of military justice and seeks to make civilian authority the handmaiden of military discipline. If a member of the Armed Forces stands accused before a civilian tribunal, he is protected with his full constitutional armor. His posture is no different from that of any other defendant so far as the protection of the Constitution is concerned. His military status cannot shear him of his basic rights.

''Judged by the guidelines announced in *Miranda* v. *Arizona*, 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974], the inculpating statements made by the accused were taken from him in violation of his rights under the Fifth Amendment. They must be suppressed as evidence.''

For these reasons it must be held that the Kerr confession, although perhaps secured under circumstances that were lawful under military law, was not admissible when offered in a California civilian court because secured in violation of the rules announced in *Escobedo*. In other words the ''silver platter'' doctrine is not here applicable.

The order is reversed.

Traynor, C. J., Tobriner, J., Mosk, J., Burke, J., and Sullivan, J., concurred.

McCOMB, J.—I dissent. I would affirm the order. See opinion prepared by Mr. Justice Whelan for the Court of Appeal in *People* v. *Kelley* (Cal.App.) 49 Cal.Rptr. 751.

Respondent's petition for a rehearing was denied April 19, 1967. McComb, J., was of the opinion that the petition should be granted.