[Crim. No. 5903. First Dist., Div. One. July 7, 1967.]

THE PEOPLE, Plaintiff and Respondent, v. JAMES A. HAZEL, Defendant and Appellant.

414

Alan C. Davis, under appointment by the Court of Appeal, and Carroll, Davis, Burdick & McDonough for Defendant and Appellant.

Thomas C. Lynch, Attorney General, John T. Murphy and Robert S. Shuken, Deputy Attorneys General, for Plaintiff and Respondent.

MOLINARI, P. J.—Defendant appeals from a judgment of conviction, following a jury trial, of receiving stolen property (violation of Penal Code section 496). His contentions on appeal are as follows: (1) Certain statements which he made to the police were improperly admitted into evidence since defendant was not advised of his right to counsel and his right to remain silent prior to making these statements; and (2) defendant was arrested without probable cause.

## The Record

According to the testimony of Gary Allsebrook, he had parked his 1961 Valiant station wagon on Sutter and Fillmore Streets in San Francisco at about 12 p.m. on April 15, 1966. In his car on this occasion were several musical instruments, including a Fenner Jazz Bass electric guitar, which he had purchased for approximately $326. At about 1:30 a.m., when Allsebrook returned to his car, he discovered that it had been broken into and that the instruments, including the guitar, were missing from the vehicle. Allsebrook further testified that he had not given anyone consent to break into his car or to remove these items from his car.

At approximately 4:15 p.m. on April 16, 1966 defendant entered the Reliable Mercantile Loan Company, a pawnshop located on Third Street in San Francisco, and asked the manager, Bernard Blumenthal, if he was interested in purchasing a guitar. Blumenthal responded in the affirmative, whereupon defendant went to a truck which was parked outside of the pawnshop and returned to the shop with an electric jazz guitar. At this time Blumenthal took defendant to the back of the store where Blumenthal's father and defendant began negotiating a price for the guitar. Blumenthal then went outside the shop, where he saw Inspector Ferraggiaro and his partner, both of whom were attached to the pawnshop detail for the San Francisco Police Department and patrolled the area encompassing Blumenthal's pawnshop. Blumenthal entered into a conversation with Ferraggiaro, the result of which was that Ferraggiaro entered the pawnshop with Blumenthal. Upon entering the pawnshop Ferraggiaro observed the senior Blumenthal and defendant leave a side table where the guitar had been placed and move to the loan counter. Also, Ferraggiaro heard conversation between the senior Blumenthal and defendant concerning the price of the guitar. Specifically Ferraggiaro heard the senior Blumenthal ask defendant if $35 was not an agreeable price; heard defendant say that he would like to have $40 ''so he and his partner could split it easier''; and then heard the senior Blumenthal agree to $40. Ferraggiaro then observed that the senior Blumenthal filled out a description of the guitar in his ''buy book'' and tendered the book to defendant, who signed his name and address as ''James Harris, 875 Page Street.''

At this point Ferraggiaro identified himself as a police inspector and asked defendant if the name he had signed was his own. When defendant responded affirmatively Ferraggiaro

asked defendant for some identification. Defendant then showed Ferraggiaro a pawn ticket dated April 15, 1966, bearing the name of ''James Harris'' and the address ''870 Oak Street.'' When Ferraggiaro noticed the discrepancy in the addresses on the two tickets he asked defendant which was his correct address, defendant replying that the address which he had just signed was correct. Ferraggiaro then asked defendant how long he had owned the guitar and where he had obtained it, defendant responding that he had purchased it three months earlier in Los Angeles from a fellow named Tim Watkins. Ferraggiaro then asked defendant who Tim Watkins was and whether he was a musician or a music dealer or a friend. Defendant replied that he was none of these things, that defendant had only met him, was not sure who he was, and did not know where to find him. At this point Ferraggiaro told defendant that he did not believe defendant's story; and that instruments of the type which defendant had attempted to sell were being stolen all the time. Accordingly, Ferraggiaro placed defendant under arrest.

### Violation of Miranda

Defendant contends that the statements which were elicited from him by Ferraggiaro at the pawnshop were introduced into evidence in violation of *Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974], which requires that an accused be advised prior to his being questioned that he has a right to remain silent, that any of his statements may be used against him, and that he has a right to the presence of an attorney, either retained or appointed. (See pp. 444, 477, 479 [16 L.Ed.2d pp. 706, 725-726].) The People concede that because this case came to trial after the decision in the *Miranda* case that the holding of that case would be applicable to the instant case, but argue that under the circumstances of the present case such warnings were not required.

Under *Miranda* the duty of the police to advise a defendant of the aforementioned rights arises ''when the individual is first subjected to police interrogation while in custody at the station or otherwise deprived of his freedom of action in any significant way.'' (P. 477, 16 L.Ed.2d p. 725; see also p. 444, 16 L.Ed.2d p. 706.)[1] It was specifically noted by the

[1]The court noted in its opinion that ''This is what we meant in *Escobedo* [*Escobedo* v. *Illinois* (1964) 378 U.S. 478 [12 L.Ed.2d 977, 84 S.Ct. 1758]] when we spoke of an investigation which focused on an accused.'' (Fn. 4, p. 444, 16 L.Ed.2d p. 706.)

court, however, that "Our decision is not intended to hamper the traditional function of police officers in investigating crime. . . . General on-the-scene questioning as to facts surrounding a crime or other general questioning of citizens in the fact-finding process is not affected by our holding. It is an act of responsible citizenship for individuals to give whatever information they may have to aid in law enforcement. In such situations the compelling atmosphere inherent in the process of in-custody interrogation is not necessarily present." (At pp. 477-478, 16 L.Ed.2d at pp. 725-726.)

In the instant case the record discloses that at the time Ferraggiaro questioned defendant concerning his name and where he had obtained the guitar which he was attempting to sell at the pawnshop, defendant was not in custody nor deprived of his freedom of action in any significant way so as to bring the *Miranda* rule into play. Accordingly, we conclude that the trial court did not err in admitting into evidence Ferraggiaro's testimony concerning the statements made to him in the pawnshop. Clearly, defendant had not been taken into physical custody either at the time he was first subjected to questioning nor at any time during the interrogation. It was not until the interrogation was completed that defendant was physically restrained.

In *People* v. *Arnold*, 66 Cal.2d 438, 445-448 [58 Cal.Rptr. 115, 426 P.2d 515],[2] the California Supreme Court recognized that custody could occur other than by the physical deprivation of a subject's freedom of action in any significant way. It was there held that custody occurs if a suspect is led to believe, as a reasonable person, that he is being deprived or restricted of his freedom of action or movement under pressures of official authority. (See *People* v. *Kelley*, 66 Cal.2d 232, 247 [57 Cal.Rptr. 363, 424 P.2d 947].)

There is nothing in the instant case, however, which suggests that defendant, while being interrogated by Ferraggiaro, was placed in a situation in which he reasonably believed that he was being deprived of his freedom of movement. Rather the situation appears to be that contemplated by *Miranda* as a "general on-the-scene questioning" in the fact-finding process incident to the investigation of crime. Although Ferraggiaro had knowledge of a police report indicating that a guitar had been stolen, his interrogation of defend-

---

[2] Although this was a pre-*Miranda* case subject to *Escobedo-Dorado* principles, it adopted the *Miranda* definition of in-custody interrogation.

418

ant, consisting of asking defendant his name and where he had acquired the guitar, amounted to no more than routine questioning for the purpose of determining initially whether defendant had committed a crime. Accordingly, it is apparent that until Ferraggiaro had completed this questioning and developed the suspicion that defendant had either stolen the guitar or that he was in possession of a stolen guitar, there was no focus of an investigation upon defendant.

The instant case does not differ substantially from *People* v. *Beasley*, 250 Cal.App.2d 71 [58 Cal.Rptr. 485], recently decided by this court, wherein we held that similar interrogation by officers on the pawnshop detail at a pawnshop where the defendants were in the process of pawning a saw was not in violation of *Miranda.* In our opinion the circumstance that in *Beasley* the officers entered into the pawnshop while on a routine pawnshop patrol, while here the officers entered at the request of Bernard Blumenthal, is not significant. The record is silent as to the substance of the conversation which took place between Bernard Blumenthal and Ferraggiaro and his partner when Blumenthal stepped outside the pawnshop. However, even if we were to assume that Blumenthal made statements to the officers that aroused their suspicions, this circumstance, in and of itself, did not alter the situation, since the officers were entitled to make on-the-scene interrogations as part of the fact-finding process of ascertaining whether there was any basis for their suspicions.

Defendant contends that in *Beasley* the officers were not prepared to arrest the defendants until the comprehensive questioning as to their identity was completed, while here the officers were prepared to arrest defendant when they heard that he was willing to accept $40 from the senior Blumenthal as the price for the guitar. While the record is unclear in this respect,[3] it suffices to say that the custody requirement of *Miranda* does not depend on the subjective intent of the law enforcement officer-interrogator but upon whether the suspect is physically deprived of his freedom of action in any significant way or is placed in a situation in which he reasonably believes that his freedom of action or movement is restricted by such interrogation. (See *People* v. *Arnold, supra,* 66 Cal.2d 438, at pp. 446-447; *People* v. *Kelley, supra,* 66 Cal.2d 232.)

[3]While Ferraggiaro did testify that the low price asked for the guitar and the lack of proper identification would have warranted an arrest, he also testified that he did not determine to arrest defendant until all the questioning had been completed.

## *Probable Cause for Arrest*

Without citation of authority or discussion of the relevant facts in the case defendant makes the argument that Ferraggiaro lacked probable cause to arrest him. ▮ ''Probable cause for an arrest is shown if a man of ordinary caution or prudence would be led to believe and conscientiously entertain a strong suspicion of the guilt of the accused.'' (*People* v. *Fischer,* 49 Cal.2d 442, 446 [317 P.2d 967] ; see also *People* v. *Ingle,* 53 Cal.2d 407, 412 [2 Cal.Rptr. 14, 348 P.2d 577].) Under this test the circumstances of each case are controlling so that each case must be decided on its own facts. (*People* v. *Ingle, supra; People* v. *Hollins,* 173 Cal.App.2d 88, 93 [343 P.2d 174] ; *People* v. *Fisher,* 184 Cal.App.2d 308, 313 [7 Cal. Rptr. 461].) ▮ In the instant case at the time Ferraggiaro arrested defendant he was aware, according to his testimony, that a police report was on file concerning a stolen guitar. Moreover, from his experience on the pawnshop detail his suspicion was aroused by the price which defendant agreed to accept for the guitar, which had a retail value of over $300. Finally, based on defendant's lack of identification, on the discrepancy between the address which defendant gave the senior Mr. Blumenthal and the address which appeared on a pawnshop ticket which defendant had obtained the previous day, and on the rather unsatisfactory responses which defendant made to Ferraggiaro's questions, the latter clearly had reasonable cause to believe that defendant had committed a crime—either the theft of a guitar or the possession of a stolen guitar.

The judgment is affirmed.

Sims, J., and Elkington, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied October 5, 1967.