Filed 9/12/13  P. v. Rivera CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

|  |  |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E056830 |
| v. | (Super.Ct.No. FVA1200226) |
| JUAN CARLOS RIVERA, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Michael A. Sachs, Judge.  Affirmed.

Law Offices of John F. Schuck and John F. Schuck, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Senior Assistant Attorney General, and Lilia E. Garcia and Peter Quon, Jr., Deputy Attorneys General, for Plaintiff and Respondent.

Police found a stolen ATM card in defendant Juan Carlos Rivera's wallet. As a result, defendant was found guilty of receiving stolen property. (Pen. Code, § 496, subd. (a).) Three 1-year prior prison term enhancements (Pen. Code, § 667.5, subd. (b)) were found true. Defendant was sentenced to six years, to be served in county jail pursuant to the Criminal Justice Realignment Act (Pen. Code, § 1170, subd. (h)), plus the usual fines and fees.

Defendant now contends:

1. The trial court erred by admitting evidence that defendant had previously been arrested for possession of a stolen pickup truck.

2. The trial court erred by admitting evidence that defendant was in possession of someone else's identification cards.

We perceive no error. We also conclude that the asserted errors were harmless. Hence, we will affirm.

I

FACTUAL BACKGROUND

Katrina Giordano was defendant's girlfriend. Around February 2, 2012, she went to the home of her grandmother, Catherine Wallace, to borrow the latter's car.

The grandmother hid her ATM card whenever her granddaughter visited. She kept the card in a coin purse; this time, she hid the coin purse in a pillow sham.

2

The next time the grandmother wanted to use the card, a couple of days later, she discovered that it was missing from the coin purse. Meanwhile, on February 3, 2012, the card had been used to make two purchases at a gas station, one for $35.00 and one for $25.03. The grandmother did not authorize these purchases.

The grandmother told her bank that the card had been stolen. She also told police that she believed that her granddaughter had stolen the card. Defendant had never been to the grandmother's home.

On February 7, 2012, a police officer investigating a report of possible domestic violence contacted defendant and his girlfriend at Veterans Park in Fontana. It was stipulated that the officer was legally authorized to search defendant. The officer searched defendant's wallet and found the grandmother's ATM card.

The prosecution introduced recordings of two phone calls that defendant made while in jail.

First, on February 16, 2012, defendant called his sister. Defendant said that his girlfriend had taken her grandmother's credit card and used it to put gas in her car. Defendant found the card in his jacket three days later. His girlfriend "was making [him] mad all the time," so he told her, "[L]ook[,] don't get me pissed 'cause I'm gonna tell your grandma what you did[,] that you took her credit card."

Second, on April 20, 2012, defendant called his girlfriend. Defendant started by discussing what her grandmother should say. For example, if the grandmother said, "I forgot that [defendant] had [the card]," "[t]hen they'll dismiss this shit." However,

3

"changing up her statement" would "make her look like a liar." On the other hand, if she was asked, "did you even know that he had it," and if she said "no," "then I'm fucked."

Defendant noted that, according to the police report, "at first I said that I got [it] from you . . . ." However, he had then "changed up his story" and said that he found it on the floor of the car.

Defendant and his girlfriend discussed what "story" defendant should "go with." She said he should say that she was the one who took the card, adding "I'm the one who used it," and "my grandma told them it was all me." She suggested, "Just . . . say that you took it away from me to give it back to my grandma." Defendant replied, "Nah, because if I say I took it away from you — you should say I handed it to you. You gave it to me."

So far, we have not discussed any of the assertedly inadmissible evidence; we will discuss it below, in connection with defendant's contentions.

II

EVIDENCE OF DEFENDANT'S PREVIOUS

POSSESION OF A STOLEN PICKUP TRUCK

Defendant contends that the trial court erred by admitting evidence that he had previously been arrested for possession of a stolen pickup truck.

A.    *Additional Factual and Procedural Background.*

1.    *Evidence as presented at trial.*

Sometime between January 13 and 14, 2010, Jorge Romero's green Nissan pickup truck, which had been parked in front of his house, disappeared.

On January 16, 2010, at 5:50 a.m., a police officer spotted Romero's truck going down the street. He determined that it had been stolen. He followed it until it turned into a driveway in front of a house and stopped.

A passenger got out and ran away. Defendant, who was the driver, got out and walked toward the house. The officer stopped him and detained him. The officer found a shaved key in the ignition.

Defendant denied knowing that the truck was stolen and denied driving the truck. He said that the other man had been driving; he also denied knowing the other man, claiming that the man had merely given him a lift.

The officer asked why defendant had gotten out of the car. Defendant said he knew someone at the house, but he could not provide the person's name or the address of the house.

2.    *Motion in limine.*

The prosecutor brought a motion in limine to admit the facts underlying defendant's prior conviction for receiving a stolen motor vehicle. (Pen. Code, § 496d.) He argued that the evidence was admissible to show absence of mistake.

5

Defense counsel argued that the evidence was essentially propensity evidence; that there was no issue of mistake; that the two cases were not similar; and that the evidence was more prejudicial than probative.

The trial court admitted the evidence. It instructed the jury three times — once before the evidence was presented, and twice at the close of trial — that it could consider the evidence only on the issue of whether defendant was mistakenly in possession of the ATM card. (CALCRIM Nos. 303, 375.) It also instructed, "Do not conclude from this evidence that the defendant has a bad character or is disposed to commit a crime." (CALCRIM No. 375.)

B.    *Analysis.*

As a general rule, character evidence — including character evidence in the form of a specific instance of conduct — is inadmissible to prove conduct on a specified occasion. (Evid. Code, § 1101, subd. (a).) However, a specific instance of conduct is admissible when relevant to prove some fact other than a mere disposition to engage in such conduct. (Evid. Code, § 1101, subd. (b).) For example, it is admissible when it is relevant to prove intent, knowledge, or absence of mistake or accident. (*Ibid*.)

"[T]o be admissible such evidence 'must not contravene other policies limiting admission, such as those contained in Evidence Code section 352. [Citations.]' [Citation.]" (*People v. Ewoldt* (1994) 7 Cal.4th 380, 404.) "Evidence of uncharged offenses 'is so prejudicial that its admission requires extremely careful analysis. [Citations.]' [Citations.] 'Since "substantial prejudicial effect [is] inherent in [such]

6

evidence," uncharged offenses are admissible only if they have *substantial* probative value.' [Citation.]" (*Ibid.*)

"""We review for abuse of discretion a trial court's rulings on relevance and admission or exclusion of evidence under Evidence Code sections 1101 and 352." [Citation.]' [Citation.]" (*People v. Fuiava* (2012) 53 Cal.4th 622, 667-668, fn. omitted.)

Absence of mistake or accident is related to both knowledge and intent. A "knowledge element is akin to absence of mistake." (*People v. Hendrix* (2013) 214 Cal.App.4th 216, 242.) Similarly, a defendant may "den[y] the necessary intent because of mistake or accident. [Citations.]" (*People v. Kelley* (1967) 66 Cal.2d 232, 243.)

In this case, intent, knowledge, and absence of mistake or accident were all crucial issues. The prosecution had compelling evidence that the card was stolen and that defendant was in possession of it; however, it did not have equally compelling evidence that he knew it was stolen or that he did not intend to return it. (See *People v. Osborne* (1978) 77 Cal.App.3d 472, 475-476 [lack of intent to prevent the owner of the property from recovering it is a defense to a receiving charge].) Thus, in opening statement, defense counsel asserted, "This is a case of good intentions gone bad." In closing argument, he asserted that the prosecution had failed to prove defendant's intent, which could have been to return the card. This could be viewed as a claim of accident or mistake — that defendant lacked the necessary criminal intent and would have returned the card if he had not been arrested before he could do so.

The prior offense was sufficiently similar to be relevant to prove absence of accident or mistake.  In that case, too, defendant was found in possession of stolen property.  He attempted to deny not only possession, but also knowledge; he claimed that he was in the truck only because the other man was giving him a lift.  However, because the officer had seen defendant driving, and also because defendant's explanation for why the truck had stopped in a driveway was so transparently false, it was clear that he had the necessary guilty knowledge.

"""""We have long recognized "that if a person acts similarly in similar situations, he probably harbors the same intent in each instance" [citations], and that such prior conduct may be relevant circumstantial evidence of the actor's most recent intent.  The inference to be drawn is not that the actor is *disposed* to commit such acts; instead, the inference to be drawn is that, in light of the first event, the actor, at the time of the second event, must have had the intent attributed to him by the prosecution.'"  [Citation.]' [Citation.]"  (*People v. Thomas* (2011) 52 Cal.4th 336, 355-356.)

The trial court could reasonably conclude that the probative value of the evidence outweighed its prejudicial effect.  The trial court repeatedly instructed the jury on the limited purpose of the evidence; it specifically instructed the jury *not* to conclude that defendant was predisposed to commit crimes.  We may presume that the jury followed this instruction (*People v. Dement* (2011) 53 Cal.4th 1, 36); the evidence was not so inflammatory as to rebut this presumption.  "In light of the significant probative value of the challenged evidence and the trial court's efforts to limit the possible undue prejudice,

8

we cannot say the trial court's ruling[] [was] an abuse of its discretion." (*People v. Fuiava*, *supra*, 53 Cal.4th at p. 670.)

## III

## EVIDENCE OF DEFENDANT'S POSSESSION

## OF ANOTHER PERSON'S IDENTIFICATION CARDS

Defendant contends that the trial court erred by admitting evidence that he was in possession of someone else's identification cards.

A.      *Additional Factual and Procedural Background.*

1.      *Evidence as presented at trial.*

The arresting officer testified that, when he searched defendant's wallet, he also found a California ID card and an Atlanta YMCA card, both in the name of "Kerrick Patterson." The photos on the cards were photos of someone other than defendant. The cards themselves were admitted as exhibits.

On cross-examination, the officer admitted that he did not know whether Patterson had given defendant permission to have the cards.

2.      *Motion in limine.*

Defense counsel brought a motion in limine to exclude the foregoing evidence, as more prejudicial than probative. The prosecutor responded that it was "circumstantial evidence with regard to the defendant's knowledge."

The trial court admitted the evidence.

9

B.      *Analysis*.

Defendant argues that the cards lacked probative value because there was no evidence that they were stolen. However, it is highly suspicious for one person to have another person's ID cards. Defendant had no possible use for Patterson's California ID card; moreover, because the YMCA card bore Patterson's photo, and because it was for an out-of-state YMCA, it would appear that he had no possible use for that, either.

Even assuming the cards were lost and defendant just happened to find them, he had a duty to "mak[e] reasonable and just efforts to find the owner and to restore the property to him"; the failure to do so would be theft. (Pen. Code, § 485.)

Of course, there is a theoretical possibility that defendant had only recently found the cards, and that he still intended to return them to Patterson. However, that was precisely what he wanted the jury to believe with respect to the grandmother's ATM card. Under what has been called (rather grandiloquently) the "doctrine of chances," "'[i]nnocent persons sometimes accidentally become enmeshed in suspicious circumstances, but it is objectively unlikely that will happen over and over again by random chance.' [Citation.]" (*People v. Spector* (2011) 194 Cal.App.4th 1335, 1379.) Thus, while it was barely possible that defendant had an innocent reason for being in possession of Patterson's cards, it was vanishingly unlikely that he had an innocent reason for also being in possession of *both* Patterson's cards *and* the grandmother's ATM card. Accordingly, this was strongly probative evidence of intent.

10

The evidence was not prejudicial, again because there was evidence that Patterson's cards were stolen; this was not merely speculation. "'The prejudice which exclusion of evidence under Evidence Code section 352 is designed to avoid is not the prejudice or damage to a defense that naturally flows from relevant, highly probative evidence.' . . . "The 'prejudice' referred to in Evidence Code section 352 applies to evidence which uniquely tends to evoke an emotional bias against the defendant as an individual and which has very little effect on the issues. In applying section 352, 'prejudicial' is not synonymous with 'damaging.'" [Citation.]' [Citation.] The evidence . . . was undoubtedly damaging to [defendant]. But it was not prejudicial under Evidence Code section 352 . . . ." (*People v. Lopez* (2013) 56 Cal.4th 1028, 1200.)

IV

CUMULATIVE PREJUDICE

While we have rejected defendant's contentions on the merits, we also conclude, separately and alternatively, that the asserted errors were not prejudicial.

Defendant claims that the errors violated his federal constitutional rights. However, the mere exercise of discretion under the ordinary rules of evidence — even if erroneous under state law — does not implicate the federal Constitution. (*People v. Cudjo* (1993) 6 Cal.4th 585, 611.) We therefore apply the state constitutional standard of prejudice. Under this standard, an error is harmless unless it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error. (*People v. Watson* (1956) 46 Cal.2d 818, 836.)

11

As already mentioned, the evidence that the ATM card was stolen and that defendant was in possession of it was compelling. The evidence of criminal intent and knowledge, while not compelling, was ample. It came from the jailhouse phone calls.

In the first call, defendant said that he knew his girlfriend had taken the card from her grandmother; he even threatened that, if she made him mad, he would tell her grandmother she had taken it. This was sufficient evidence of knowledge. Also, it implicitly meant that, as long as his girlfriend did *not* make defendant mad, he was going to keep the card; thus, it was at least some evidence of intent.

In the second phone call, defendant's girlfriend suggested: "Just . . . say that you took it away from me to give it back to my grandma." Defendant, however, rejected this suggestion, saying, "Nah . . . ." Thus, both participants implied that, if defendant were to claim that he intended to return the card, that would be a lie.

Most important, this evidence was *uncontradicted*. There was no conflicting evidence; defendant did not testify. Thus, it is not reasonably probable that, even if the assertedly inadmissible and prejudicial evidence had been excluded, the jury would have had a reasonable doubt as to guilt.

V

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RICHLI _____

J.

We concur:

McKINSTER _____

Acting P. J.

MILLER _____

J.