[Crim. No. 20232. First Dist., Div. Four. Dec. 12, 1980.]

THE PEOPLE, Plaintiff and Respondent, v.
JARRON SCOTT, Defendant and Appellant.

COUNSEL

William J. O'Connor, under appointment by the Court of Appeal, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, W. Eric Collins and Dane R. Gillette, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

CALDECOTT, P. J.—Codefendants Jarron Scott and Ronald McGee were convicted of robbery (Pen. Code, § 211). Both appealed; McGee's appeal was subsequently dismissed under California Rules of Court, rule 17(a). Scott contends that a trial court ruling which permitted the People to prove, in rebuttal, that Scott had previously been convicted of a different robbery constituted reversible error in and of itself and also wrongfully compelled Scott to relinquish his right to remain silent. We find that the trial court's ruling was both substantively and procedurally proper. Therefore we affirm.

The broad outlines of the fact situation were not disputed: Late in the evening, on Third Street in the Bay View district of San Francisco, Scott and McGee became involved in a physical confrontation with one Opelousas, and blows were struck on both sides. Police arrived while the parties were still struggling. Opelousas accused Scott and McGee of stealing his wallet. Opelousas' wallet was found in Scott's pocket. Both Scott and McGee were arrested.

Opelousas testified that he had been walking home from a grocery store when he was pushed into a doorway where McGee repeatedly struck him while Scott reached into his front pants pocket and removed his wallet. Two police officers testified that as they drove along Third Street they saw Scott holding Opelousas and McGee striking him, and that when the officers approached, both Scott and McGee moved to leave the scene in different directions but were immediately detained. Upon detention, McGee struggled and protested his innocence. Scott said to Opelousas, "Tell him that we're friends. Tell him that it's all

right." Later McGee said to Scott that "This is all your fault" and Scott told McGee to "shut up." At booking an open knife was found in the same pocket of Scott's jacket from which Opelousas' wallet had been taken.

Scott and McGee both testified. Their essentially similar testimony was that they had been visiting various locations in that part of San Francisco, that McGee had had too much to drink, and that as they approached Opelousas Scott was teasing McGee about his state of inebriation. McGee then pointed out Opelousas and suggested that Opelousas was more intoxicated than McGee, whereupon Opelousas attacked McGee, McGee defended himself, and Scott interceded to help McGee. McGee testified that in the course of the struggle he lost his wallet and that as the police arrived McGee asked Scott to pick up his wallet. Scott testified that he saw a wallet on the ground, believed it to be McGee's and picked it up at McGee's request.

In rebuttal a police inspector testified that in postarrest interviews neither McGee nor Scott mentioned that McGee had lost his wallet or had asked Scott to pick it up.

In the course of the People's case on rebuttal one Knight testified that in 1971 (eight years earlier), late in the evening, on Haight Street in San Francisco, he was struck by an individual named Scott, whom he could no longer identify, and that another person then held Knight's arms while Scott tried to take money out of Knight's pants pocket. When Knight twisted and turned, Scott produced a knife, cut off Knight's pockets and took $30. A police officer identified appellant Jarron Scott as the individual Knight had accused of robbery in 1971. Scott had previously acknowledged to the jury, in the course of his testimony on direct examination, that he had been convicted of robbery in 1971.

Scott had also suffered a felony conviction for burglary, in 1969, for which he was initially admitted to probation. When he was convicted of robbery, in 1971, his burglary probation was revoked. Scott went to prison in 1971.

Only the burglary prior was alleged in potential enhancement of any prison term Scott might ultimately receive in this action (Pen. Code, § 667.5) and Scott admitted the burglary prior for that purpose. Early

in the proceedings the trial court ruled that the robbery prior could not be used to impeach Scott should he testify (Evid. Code, § 788; cf. *People* v. *Beagle* (1972) 6 Cal.3d 441 [99 Cal.Rptr. 313, 492 P.2d 1]); late in the proceedings the trial court made the same ruling with respect to the burglary prior. The People made no attempt to use the burglary prior as circumstantial evidence on the merits. (Cf. Evid. Code, § 1101, subd. (b).) But from the outset the People sought to use the robbery prior as evidence of Scott's intent on this occasion, and the trial court ultimately ruled that the People could prove the robbery prior for that purpose. This ruling, and the manner in which it was arrived at, are the only matters of which Scott complains on appeal.

Initially, the trial court reserved ruling on the People's application to use the robbery prior as evidence on the merits. Apparently the court subsequently determined, and instructed the prosecutor in proceedings off the record, that the prosecutor should not refer to the robbery prior in the People's case in chief for the reason that the court did not perceive that identity would be an issue and was not aware of "any other disputed fact such as intent or motive or knowledge" as to which the robbery prior would be relevant. Apparently the court also informed counsel, off the record, that were Scott specifically to place intent in issue the court would consider letting the prosecutor use the robbery prior in rebuttal.

The People's case in chief contained no reference to either prior. After the People rested the court ruled that the People could use the burglary prior to impeach Scott. Counsel for Scott stated that he needed to have a clear ruling as to whether the prosecutor would be allowed to use the robbery prior in rebuttal, so that counsel could make tactical decisions. Counsel then stated that "my client is going to testify, there's no question about it, he wants to testify," and disclosed that Scott's factual defense would be that he believed that the wallet was McGee's and thus that he lacked the intent to take Opelousas' property. Counsel indicated that if the prosecutor were permitted to use the robbery prior in rebuttal, Scott would want to disclose and discuss the robbery prior in his own direct testimony. The court indicated a belief that counsel's statement placed intent in issue and that the robbery prior would be admissible on that issue.

McGee then put on his case in chief. After McGee rested, counsel for Scott advised the court in chambers that Scott would *not* testify, be-

cause of the probability that he would be impeached by means of the burglary prior and "more importantly" because the prosecutor would then be permitted to use the robbery prior in rebuttal. The court then indicated that it would consider reversing its ruling that the burglary prior could be used to impeach, if such a reversal would "give...[Scott] an opportunity to testify." But at the same time the court reaffirmed its ruling that the robbery prior could be used as rebuttal evidence.

The prosecutor then proposed to tender the robbery prior in rebuttal in light of McGee's testimony, whether or not Scott chose to testify. The court ruled that McGee's testimony provided a sufficient predicate for proof of Scott's robbery prior in rebuttal.

Based on this ruling, Scott changed his mind again, stating through counsel that he would testify. The court then reversed its ruling as to the burglary prior, instructing the prosecutor not to attempt to use the burglary prior to impeach Scott. Scott then testified, admitting the robbery prior during direct examination. In rebuttal, the People introduced evidence of the circumstances of the 1971 robbery. The burglary prior was never made known to the jury.

*The ruling*

 Scott contends that the robbery prior could not come in to prove intent, both because Scott had not himself specifically placed intent in issue and because in any event the probative value of the robbery prior was not sufficient to outweigh its inherent tendency to prejudice Scott in the eyes of the jury.

Analysis of Scott's contentions should begin from Evidence Code section 1101, which provides in pertinent part that "(a)...[with exceptions not relevant to this action] evidence of a person's character or a trait of his character (whether in the form of an opinion, evidence of reputation, or evidence of specific instances of his conduct) is inadmissible when offered to prove his conduct on a specified occasion. [¶] (b) Nothing in this section prohibits the admission of evidence that a person committed a crime, civil wrong, or other act when relevant to prove some fact (such as motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident) other than his disposition to commit such acts." These rules have been elaborated upon in many California cases, which make clear that evidence of

crimes other than those charged in the pending proceeding must be received only with great caution. (Cf., e.g., *People* v. *Kelley* (1967) 66 Cal.2d 232 [57 Cal.Rptr. 363, 424 P.2d 947]; *People* v. *Schader* (1969) 71 Cal.2d 761 [80 Cal.Rptr. 1, 457 P.2d 841]; *People* v. *Guerrero* (1976) 16 Cal.3d 719 [129 Cal.Rptr. 166, 548 P.2d 366].) Any evidence of a defendant's criminal conduct, on other occasions, no matter how relevant to issues legitimately before the court, will have an inevitable tendency to suggest that the defendant has a general criminal propensity or disposition, and thus an inevitable tendency to persuade a trier that the defendant is somewhat more likely to have committed the crime currently charged: there is no bright line to be drawn between subdivisions (a) and (b) of section 1101. The broadest statement of the basic rule is that evidence of a defendant's other offenses should be admitted only " . . . when the probative value of such evidence outweighs its prejudicial effect. [Citations.] This balancing test is necessarily particularistic, depending not upon mechanically automatic rules, but upon the trial court's consideration of the unique facts and issues of each case according to the guidelines which we summarize below." (*People* v. *Schader, supra*, 71 Cal.2d 761, 773-774.)

Special rules have been developed where the issue to be proved is the *identity* of the perpetrator of the crime currently charged (cf., e.g., *People* v. *Thornton* (1974) 11 Cal.3d 738, 755-760 [114 Cal.Rptr. 467, 523 P.2d 267], disapproved as to unrelated issue in *People* v. *Flannel* (1979) 25 Cal.3d 668, 685, fn. 12 [160 Cal.Rptr. 84, 603 P.2d 1]; *People* v. *Haston* (1968) 69 Cal.2d 233, 244-250 [70 Cal.Rptr. 419, 444 P.2d 91]; *People* v. *Rodriguez* (1977) 68 Cal.App.3d 874, 882-886 [ 137 Cal.Rptr. 594]) and in *sex* cases (cf., e.g., *People* v. *Kelley, supra*, 66 Cal.2d 232 at p. 240; *People* v. *Thomas* (1978) 20 Cal.3d 457, 465 [143 Cal.Rptr. 215, 573 P.2d 433]; *People* v. *Cramer* (1967) 67 Cal.2d 126, 129 [60 Cal.Rptr. 230, 429 P.2d 582]; *People* v. *Pendleton* (1979) 25 Cal.3d 371, 376-378 [158 Cal.Rptr. 343, 599 P.2d 649]). This action falls into neither category: It remains subject to general rules, most recently summed up by the Supreme Court in *People* v. *Thompson* (1980) 27 Cal.3d 303 [165 Cal.Rptr. 289, 611 P.2d 883]: "As with other types of circumstantial evidence, . . . admissibility [of evidence of an uncharged offense] depends upon three principal factors: (1) the *materiality* of the fact sought to be proved or disproved; (2) the *tendency* of the uncharged crime to prove or disprove the material fact; and (3) the existence of any *rule* or *policy* requiring the exclusion of relevant evidence." (27 Cal.3d at p. 315.)

■ Scott tacitly acknowledges that intent is one of the specifically enumerated facts which may be proved by otherwise admissible evidence of a crime committed on another occasion, notwithstanding the general proscription contained in subdivision (a) of section 1101. (Evid. Code, § 1101, subd. (b).) He contends, in necessary effect, that evidence of the robbery prior was not otherwise admissible, because it was neither *material* nor sufficiently *relevant*.

### (1) *Materiality*

■ "In order to satisfy the requirement of *materiality*, the fact sought to be proved may be either an ultimate fact in the proceeding [fn. 13 omitted] or an intermediate fact 'from which such ultimate fact[] may be presumed or inferred.' [Fn. 14 omitted.] [Citation.] Further, the ultimate fact to be proved must be 'actually in dispute.' [Citation.] If an accused has not 'actually placed that [ultimate fact] in issue,' evidence of uncharged offenses may not be admitted to prove it. [Citations.] The fact that an accused has pleaded not guilty is not sufficient to place the elements of the crimes charged against him 'in issue.' [Citation.]" (*People* v. *Thompson, supra*, 27 Cal.3d 303, 315.) An intent permanently to deprive the possessor of his property is an essential element of robbery (1 Witkin, Cal. Crimes (1963) Crimes Against Property, § 441, pp. 407-408); hence such an intent was "an ultimate fact in his trial" here. (Cf. *People* v. *Thompson, supra*, 27 Cal.3d 303 at p. 315, fn. 13.) At the time the trial court ruled, Scott's codefendant, McGee, had placed at least his own intent specifically in issue by testifying that Opelousas was the aggressor and that the only wallet with which McGee was concerned was his own. Scott contends, however, that at the time of, and so far as relevant to, the trial court's ruling, *Scott* had not placed *his* intent in issue in the requisite sense.

This narrow contention may be taken to be correct: By way of a voluntary offer of proof Scott's counsel had advised the court that Scott *intended* to place his intent specifically in issue in the course of his testimony, but Scott had then announced that he would not testify. It was at this point that the court ruled that the robbery prior could be proved in rebuttal whether or not Scott were to testify. The trial court plainly concluded that admissibility did not hinge on a finding that Scott had specifically placed his own intent in issue.

Appellant necessarily argues that neither his not guilty plea nor McGee's testimony provided a sufficient predicate of *materiality* for

proof of the robbery prior. He contends that his intent must have been placed in issue not only specifically but also by his own affirmative act.

*Thompson* and the cases which it cites and summarizes do appear to suggest that to meet the materiality requirement the *accused* must be shown to have placed the fact in issue. But we find no policy reason for reading these cases as literally as Scott would ask. In the usual criminal case a single defendant stands trial alone: If anyone is to raise an actual dispute as to any fact, it must be he. But *Thompson* makes clear that the crux of the materiality requirement is the need to establish the legitimate importance of the fact to the People's case, and not necessarily the exact manner in which the issue became important. We find no case which says or suggests that an element of waiver, requiring the personal participation and acquiescence of the accused, is involved. ■ Here there was unquestionably a genuine dispute as to intent once McGee had testified: His account linked Scott and himself as coactors, and furnished Scott—whether or not he testified—with factual support for the only argument the rest of the evidence left him: An assertion that Opelousas had started the scuffle and that Scott had come into possession of Opelousas' wallet by mistake. It would be ingenuous to deny, in these circumstances, that the issue of Scott's intent had become material in the requisite sense.

### (2) *Relevance*

■ "In ascertaining whether evidence of other crimes has a *tendency* to prove the material fact, the court must first determine whether or not the uncharged offense serves '"logically, naturally, and by reasonable inference"' to establish that fact. [Fn. 15 omitted.] [Citations.] The court 'must look behind the label describing the kind of similarity or relation between the [uncharged] offense and the charged offense; it must examine the precise elements of similarity between the offenses with respect to the issue for which the evidence is proffered and satisfy itself that each link of the chain of inference between the former and the latter is reasonably strong.' [Fn. 16 omitted.] [Citation.] If the connection between the uncharged offense and the ultimate fact in dispute is not clear, the evidence should be excluded. [Citations.]" (*People v. Thompson, supra*, 27 Cal.3d 303, 316.)

■ Here the evidence was ample to sustain the trial court's implicit finding that the chain of inference was reasonably strong: With respect

both to the prior crime and to the crime currently charged there was evidence that Scott accosted a stranger on a San Francisco street late in the evening, that a confederate engaged the victim physically while Scott reached into his pants pocket seeking money, and that Scott was armed with a knife. Implicit in Scott's conviction of robbery on the prior occasion was a determination that he had acted with the requisite criminal intent; if the jury were to find that the physical facts were as Opelousas described them, then the similarity between Opelousas' testimony and the victim's description of the prior crime would give rise to a legitimate inference, despite the passage of considerable time, that Scott acted with the same criminal intent on the second occasion. (Cf. *People* v. *Thompson, supra,* 27 Cal.3d 303 at pp. 319-320.)

*Effect of the ruling.*

Scott contends that the trial court's assertedly erroneous ruling was prejudicial to him in that it compelled him to testify against his will. We have concluded that the ruling was not erroneous; therefore we need not reach Scott's contention that it was the ruling which persuaded him to testify, since in this respect Scott would have been no worse off than any criminal defendant whose decision to testify is influenced by legitimate trial rulings on other matters.

Scott also argues that the assertedly indecisive manner in which the court arrived at its ruling had an impact upon Scott's attempt to construct trial strategy so severe as to constitute reversible error independent of the substance of the ruling.

It is true that the trial court reconsidered and refined its rulings, as to both priors, more than once. Scott argues that he "was entitled to an advance, conclusive ruling on the admissibility of any or all of his convictions. The trial court's failure to do so was gr[i]ev[]ous error. To make an intelligent and informed decision whether to testify, Appellant had a right to know the court's position regarding admission of his prior convictions. To equivocate in making such a ruling is a disingenuous act on the part of the court; it forced the Appellant to unwittingly abrogate his right to testify or his right to remain silent." At best this argument misconstrues the record and is unfair to the trial court which did make "conclusive" rulings as to both priors before Scott was required to make a "decision whether to testify." The process of reconsideration and refinement leading to those rulings was not made known to the jury, and Scott gives no substance to his intimation that the process prejudiced

him: Had the court's ruling come before jury selection began, Scott's decision as to whether to testify would presumably have been the same as it ultimately was.

In fairness to the trial court it should be said that its prolonged consideration of the prior convictions reflected not indecision but rather a sound grasp of the pivotal principle that prior convictions must be handled with care and should be made known to the jury only on the basis of a careful weighing process, whether on credibility or on the merits. Here the trial court was obviously weighing relevance against prejudice at all stages of the proceedings; commendably, it added new data to the balance whenever the new data—the nature of the priors, Scott's gratuitous offer of proof, McGee's testimony—was made available to it, and reread the scale each time. Far from being guilty of Scott's ill-considered charge that it was actively attempting to put the robbery prior before the jury, the trial court was patently attempting to protect the rights of all the parties.

The judgment is affirmed.

Poché, J., and Koford, J.,* concurred.

---

*Assigned by the Chairperson of the Judicial Council.