[Crim. No. 15945. Fourth Dist., Div. One. Nov. 25, 1985.]

THE PEOPLE, Plaintiff and Respondent, v.
MARK STEVEN CALLAN, Defendant and Appellant.

COUNSEL

Charles R. Khoury, Jr., under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Keith I. Motley, and John W. Carney, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**BUTLER, J.**—Mark Steven Callan was convicted by jury of four counts of lewd and lascivious conduct with a child under the age of 14 years (Pen.

Code,[1] § 288, subd. (a), (§ 288(a)). After a diagnostic test under section 1203.03, the court granted Callan four years probation conditioned on, among others, serving 270 days in county jail and registering as a sex offender pursuant to section 290. Callan appeals, contending: (1) two counts are barred by the statute of limitations; (2) evidence of the uncharged acts directed at the victim's younger sister were prejudicially admitted into evidence; (3) the prosecutor failed to elect which acts were being relied upon to support the charges; and (4) instructional error. We shall reverse one count as time barred and affirm the remainder of the judgment.

*Facts*

As Callan does not challenge the sufficiency of the evidence, we briefly state the facts.

On May 27, 1983, Angelia J. (Angie), 12 years old, told her best friend and Mrs. Christian, a teacher at her school, about two recent incidents of Callan molesting her. On May 26, 1983, and two weeks before, Angie had been driving with Callan when she asked if she could steer the car. Angie got in his lap and started driving. Callan put his hands on her legs and then rubbed her crotch area. Angie kept moving his hands away but he moved them back. Callan told her not to worry. Nobody else was in the car during the first incident, but her sister Misty J. (Misty), 10 years old, and her 7-year-old stepbrother, were in the car May 26, 1983.

Deputy Sheriff John Neil Christiansen was called to the school to talk with Angie about a possible ongoing child molest. After an initial period of fear and embarrassment, Angie confirmed her story about the two specific instances in the family car and then began relating episodes of lewd acts Callan committed with her and her younger sister over the past six years. Callan had lived with her mother, Mary J., without being married, since 1976 in the Valley Center area of San Diego County. During this time, Callan had continuously touched her pelvic area and had fondled her in the breast area. Callan would often put her to bed and fondle her both on top of her nightgown and underneath while exposing his genitals and making her touch his penis. She mentioned he often placed his finger in her vagina. Angie stated the same acts Callan committed on her were committed on her sister Misty. Angie explained she had been afraid to say anything before because Callan had told her not to but she decided to tell someone because she was mad about the recent incidents in the car.

Christiansen separately interviewed Mary J. and Callan. Mary J. initially said she had absolutely no knowledge of any acts by Callan and then said

---

[1]All statutory references are to the Penal Code unless otherwise specified.

Angie had told her the night before that these acts were occurring but Mary was not sure who to believe. Callan stated, "All I can say, is this is a definite case of control over lust." He said Angie was very well developed for her age, was very promiscuous and he thought the story was fabricated by Angie in order to get out of the household and go live with her natural father. The only times he may have touched her or her sister were when he was innocently playing with them. Callan left Christiansen's office laughing and stating, "It's my word against hers anyway."

The case was then turned over to Alice Pollero, a social worker with Child Protective Services, who interviewed Angie and Misty on June 1, 1983. In a separate interview, Angie confirmed her previous stories and also mentioned a specific incident when she and Misty were taking a shower and Callan, while showing them how to wash between their legs, rubbed them between their legs for some time and stuck his finger up her vagina. Angie was afraid of Callan because of the sexual abuse and because he whipped her hard enough to leave bruises.

Callan was charged in an amended information with five felony counts: count one charged a lewd and lascivious act under section 288(a), occurring between May 10, 1983 and May 19, 1983; count two alleged a lewd and lascivious act under section 288(a), committed on or about May 25, 1983; count three charged a lewd and lascivious act under section 288(a) occurring between November 26, 1977 and August 31, 1978; count four alleged a lewd and lascivious act under section 288(a) occurring between September 1, 1978 and June 1, 1979; and count five charged unlawful penetration of the genital and anal openings of another person by a finger under section 289, subdivision (a), occurring between November 26, 1977 and November 26, 1978.

September 13, 1983, the trial began. Angie testified consistent with her pretrial interview statements. Her sister Misty was permitted to testify to similar uncharged sex acts directed at her by Callan. Angie's mother and Callan testified in defense. Mary J. stated Angie wished to return to her natural father and had lied quite often to get her way and Misty followed Angie's lead. Callan denied any intentional sexual acts and explained any touching as accidental and innocent, the inescapable result of playing with and assisting Mary J. in the raising of the girls. Callan admitted resting his hands on Angie's thighs during the car-driving incidents, pinching Angie on the breast while teasing her about not needing a training bra, playing "pinch and giggle" where any part could be touched while horsing around, and "french kissing" the girls on occasion to calm them down when they became rowdy. He denied any sexual desire for the girls and stated he never intentionally rubbed or grabbed the girls in the genital area with such desire.

Before instructions and closing arguments, the court granted Callan's section 1118.1 motion as to count five. The jury returned guilty verdicts on the remaining four counts.

*Discussion*

I

In a supplemental letter brief, Callan contends counts three and four are barred by the statute of limitations (§ 800) and the convictions on those counts should be reversed. ■ A substantive statute of limitation question is properly raised at any time. (*People* v. *Chadd* (1981) 28 Cal.3d 739, 757 [170 Cal.Rptr. 798, 621 P.2d 837].) ■ The People concede count three is time-barred but argue count four falls within the limitation period for section 288(a). We agree.

Count four charged Callan with lewd and lascivious conduct between September 1, 1978 and June 1, 1979. At trial Angie could not remember the exact dates of his conduct. Rather, the dates for the specific acts were calculated by reference to Angie's birthday, her residence and her grade in school. She was born on November 26, 1970, making her 12 years old and in the 7th grade at the time of trial. She testified she was in the second grade, living in a house on Cobb Lane in Valley Center, was seven or eight, when Callan touched her on three occasions. The first incident shown by the evidence to fall under count four was after her birthday on November 26, 1978.

Count four was filed by amended information September 7, 1983. Relying on *People* v. *Gordon* (1985) 165 Cal.App.3d 839, 849-852 [212 Cal.Rptr. 174], Callan argues prosecution on count four was barred on September 1, 1981, because section 288(a) was subject to a three-year statute of limitations in 1978. In *Gordon,* however, the court's analysis referred to a section 286, subdivision (b)(2) violation and not a section 288(a) violation, the important difference being the Legislature amended section 800 in 1980, effective January 1, 1981, to provide a five-year statute of limitations for a prosecution of a violation of section 288. (Stats. 1980, ch. 1307, § 2, pp. 4422-4423.) In 1981 the Legislature again amended section 800, effective January 1, 1982, lengthening the statute of limitations for prosecution of section 288 violations to six years. These amendments apply to count four because they were enacted before the old statutory periods respectively expired. (*People* v. *Gordon, supra,* 165 Cal.App.3d 839 at p. 851; *People* v. *Eitzen* (1974) 43 Cal.App.3d 253, 266-267 [117 Cal.Rptr. 772].) Because the 1980 amendment was effective January 1, 1981, before the expiration date of the old statutory period, the statute of limitations was extended to

September 1, 1983 (five years) and again extended under the 1981 amendment to September 1, 1984 (six years). The filing of the amended information on September 7, 1983, was well within the limitation period.

Because we reverse on count three, we only discuss Callan's remaining contentions with respect to counts one, two and four.

## II

Angie's younger sister Misty testified Callan often touched her breasts and rubbed his hand around her "peepee," on top of her clothes and underneath them. She said he would unzip his pants, take it out, and tell her to touch his "wiener." One time she saw "white stuff" come out of his "wiener." Callan argues it was prejudicial error for the court to allow in evidence this testimony concerning his sexual acts directed at Misty; there was no proper purpose for the evidence and it was prejudicial under Evidence Code section 352.

At the outset of trial, outside the jury's presence, the court heard preliminary arguments on the admissibility of Misty's testimony. The prosecution represented the testimony would show common design or plan, intent, and a clear connection between the offenses charged involving Angie and the uncharged acts involving Misty. Based on this offer of proof regarding similar acts and a review of case law, the court ruled the evidence admissible subject to further objection at the appropriate time.

In making his ruling, the judge commented the evidence of Callan's prior disposition to commit these crimes was admissible. Taking these statements out of context, Callan claims the only purpose for which the uncharged acts were admitted was to prove his disposition or propensity to commit the charged crimes, contrary to established rules of evidence, making such evidence inadmissible. (Evid. Code, § 1101, subd. (a); *People* v. *Thompson* (1980) 27 Cal.3d 303, 317 [165 Cal.Rptr. 289, 611 P.2d 883].) However, this rule of exclusion does not apply to uncharged acts which are relevant to prove something other than criminal predisposition. (Evid. Code, § 1101, subd. (b).)

 It is well established evidence of other sex crimes is admissible under Evidence Code section 1101, subdivision (b), in cases where the evidence proves a material fact other than criminal disposition, has a tendency to prove or disprove the material fact and is not merely cumulative, and the probative value outweighs its prejudicial effect. (*People* v. *Tassell* (1984) 36 Cal.3d 77 [201 Cal.Rptr. 567, 679 P.2d 1]; *People* v. *Thompson, supra,* 27 Cal.3d 303 at p. 315.) "The test of relevance is whether the evidence

'tend[s] logically, naturally, and by reasonable inference, to establish any fact[s] material for the people [such as identity, intent, plan, motive, preparation, or opportunity] or to overcome any material matter sought to be proved by the defense.' [Citation.]" (*People* v. *Alcala* (1984) 36 Cal.3d 604, 631 [205 Cal.Rptr. 775, 685 P.2d 1126].)

██ The evidence of Callan's conduct with Misty tends naturally, and by reasonable inference, to establish Callan's intent to commit sexual acts when he touched Angie and to eliminate the likely defense theory his contact with Angie was merely innocuous or in good fun. In addition, Callan's intent was an element of the crimes charged.

Callan, however, urges his intent was not actually in dispute as he merely pleaded not guilty to any sexual misconduct with Angie. He cites precedent which holds evidence of uncharged crimes cannot be admitted in the People's case in chief but must await the defendant's placing the ultimate fact in issue. Because a not guilty plea is not sufficient to place the elements of the crime "in issue" and his opening statement did not do so, Callan urges the court erred in ruling the uncharged crimes admissible before he testified and placed his intent "in issue."

Relying on *People* v. *Thompson, supra,* 27 Cal.3d 303, *People* v. *Perkins* (1984) 159 Cal.App.3d 646 [205 Cal.Rptr. 625], holds it is error for evidence of earlier crimes to be admitted unless the issue is placed in dispute either by defendant making an opening statement or presenting a defense. (*Id.* at pp. 651-652.) *Perkins* says: "To reduce the possibility that an uncharged offense will be admitted to prove an element of the crime before that element is placed in issue, trial judges are advised to follow the procedure used by the trial judge in *People* v. *Scott* [1980] 113 Cal.App.3d 190 [169 Cal.Rptr. 669]. [There, the judge] instructed the prosecutor to avoid reference to an uncharged offense in his case in chief, but ruled that if the defense placed any ultimate facts into issue, he would consider allowing the prosecutor to use an uncharged offense in rebuttal." (*Perkins* at p. 652.)

While we are comfortable with *Perkins,* it does not establish the only procedure to be used for admitting evidence of uncharged offenses. ██ Concerning the problem of what time during trial such evidence can properly be received, Justice Jefferson (ret.) said whether the prosecution is entitled to offer evidence of an earlier offense on an issue such as intent or identity as part of its case in chief, "depends on whether before the evidence is offered, defendant indicates that he is *not* raising the particular issue. If no such indication is given, the prosecution may offer the evidence as part of its case in chief, because the prosecution has the burden of proving all

elements of the offense, including intent and identity of defendant as the perpetrator." (2 Jefferson, Cal. Evidence Benchbook (2d ed. 1982) § 33.6, p. 1201, original italics.) ▮ Further, the California Supreme Court in *People* v. *Archerd* stated: "There is no merit in the contention of defendant that until he puts in issue either identity, intent or other fact the People may not anticipate this and present evidence of other acts in their case in chief. It is not necessary for the defendant to raise issues before the People may meet them *where this is part of the prosecution's burden.* The People have the burden of establishing intent and identity." (*People* v. *Archerd* (1970) 3 Cal.3d 615, 639 [91 Cal.Rptr. 397, 477 P.2d 421], italics added.)

Without debating the merits of these differing approaches, we believe the preferable procedure is that recommended by Justice Jefferson. Using this approach, we are satisfied, in light of his admissions to the investigator before trial, Callan would have testified at trial to explain away his behavior with both children. The record does not suggest Callan's decision to testify was related to the court's *in limine* ruling permitting the uncharged conduct to be admitted in the People's case-in-chief, nor does he argue such. Accordingly, on this record, admitting evidence of uncharged conduct before Callan testified rather than after his testimony has no legal significance.

▮ Further, where the prior offenses "(1) are not too remote in time, (2) are similar to the offense charged, and (3) are committed upon persons similar to the prosecuting witness," evidence of uncharged sex offenses is also admissible to show a common scheme. (*People* v. *Thomas* (1978) 20 Cal.3d 457, 465 [143 Cal.Rptr. 215, 573 P.2d 433], disapproved on other grounds in *People* v. *Thompson, supra,* 27 Cal.3d 303.)

▮ Misty's testimony tended to show a continuing plan or design on Callan's part "to use minor female members of his own household . . . to satisfy his sexual gratifications and wants. [Citations.]" (*People* v. *Fritts* (1977) 72 Cal.App.3d 319, 324 [140 Cal.Rptr. 94].) The acts against Misty occurred between 1980 and 1983, were the same types of conduct which were directed at Angie, e.g., rubbing vagina, putting finger up vagina, touching breasts, having the girl touch his penis, etc., and involved minor female members of Callan's household. The uncharged acts were material and relevant.

The central issue raised by the evidence was Callan's intent at the time he committed the charged crimes. Unquestionably, the part of Misty's testimony describing Callan rubbing "Angie's peepee" during the second car-driving incident which directly corroborates Angie's testimony is admissible. Her other testimony, as noted above, tends to show a common plan or design from which reasonable inferences going to the issue of intent can be

made. Evidence of other uncharged crimes was thus not merely cumulative of Angie's testimony. It tended to corroborate Angie's testimony concerning Callan's intent. The evidence of similar uncharged acts of Callan directed toward Misty, therefore, had substantial probative value. (*People* v. *Thompson, supra,* 27 Cal.3d 303 at p. 318.)

The record reflects the court initially weighed the prejudicial effect of the evidence against its probative value based on the prosecutor's burden of proof *in limine.* The court ruled Misty's testimony was admissible conditioned on Callan raising timely Evidence Code section 352 objections. Callan failed to raise any Evidence Code section 352 objections when Misty was called to testify or during her questioning. Although the acts with Misty could have prejudicial effect because they prove Callan's disposition to commit criminal sex acts, their probative value on the question of Callan's state of mind at the time of touching Angie is very strong. The court admonished the jury Misty's testimony was to be used for a very limited purpose, "only to show plan, scheme, intent, that type of activity," and also gave proper limiting instructions before the jury deliberated. Callan has not shown prejudice outweighing the substantial probative value we find in Misty's testimony.

### III

■ Callan next contends he was denied due process because the prosecutor failed to elect which acts were being relied upon to support the charges. Such failure to elect, combined with defense counsel's failure to demand an election, the fact the amended information failed to state the name of the victim, and the fact testimony and arguments mentioned two young girls, caused jury confusion which denied him a fair trial.

Emerging from recent cases dealing with the problems arising when a crime is charged and the evidence describes several acts, any one of which could constitute the crime charged, "is the so-called 'either/or' rule: . . . *either* the prosecution must select the specific act relied upon to prove the charge *or* the jury must be instructed in the words of CALJIC No. 17.01[2] or 4.71.5 or their equivalent that it must unanimously agree beyond a reasonable doubt that defendant committed the same specific criminal act. [Citations.]" (*People* v. *Gordon, supra,* 165 Cal.App.3d 839 at p. 853, original italics, fns. omitted.)

---

[2]CALJIC No. 17.01 (4th ed. 1979) provides: "The defendant is charged with the offense of _____. He may be found guilty if the proof shows beyond a reasonable doubt that he committed any one or more of such acts, but in order to find the defendant guilty, all the jurors must agree that he committed the same act or acts. It is not necessary that the particular act or acts committed so agreed upon be stated in the verdict."

In this case, we initially note evidence at trial showed counts one and two only refer to one act each. Therefore, we assume the election issue is directed to count four. Count four alleged lewd and lascivious conduct occurring between September 1, 1978 and June 1, 1979. The evidence at trial showed three specific incidents occurring during that time, two allegedly in the bedroom and one in the shower. No election of a specific act was made by the prosecutor but the court gave an instruction in the form of CALJIC No. 17.01 for the lewd and lascivious conduct and the court gave an example of the instruction's meaning.[3] This instruction and explanation cured any failure by the prosecution to elect a specific act. (*People v. Gordon, supra,* 165 Cal.App.3d 839 at p. 854; *People v. Dunnahoo* (1984) 152 Cal.App.3d 561, 568 [199 Cal.Rptr. 796].) Accordingly, we find no error concerning election as to count four.

■ Callan further meritlessly argues jury confusion because of reference during trial to Misty as well as Angie. From day one the jurors were advised the case against Callan was directed at acts committed against Angelia J. With the exception of Misty's testimony, the record shows all evidence and argument presented by either counsel, and comments of the court, clearly referring to Angie as the victim. The court properly instructed the jury on the limited use of evidence of acts against Misty. There was no confusion.

IV

■ Finally, Callan claims the trial court erred in failing to instruct on its own motion on the lesser included offense of misdemeanor child molestation (§ 647a). ■ ■ While misdemeanor child molestation is a lesser included offense of section 288 (*People v. Gordon, supra,* 165 Cal.App.3d at p. 864), no instruction on the lesser offense is required unless the defendant is relying on such as a defense or there is substantial evidence in support of it. (*People v. Wickersham* (1982) 32 Cal.3d 307, 323-326

---

[3]The jury was instructed: "The defendant is charged with four counts of lewd act with a child. He may be found guilty of each count, only if the proof shows beyond a reasonable doubt that he committed any one or more of the acts. But in order to find the defendant guilty on any one count, all of the jurors must agree that he committed the same act or acts. It is not necessary that the particular act or acts committed so agreed upon be stated in the verdict. [¶] Ladies and gentlemen, you will recall we have some time periods in here. We have some testimony that, there was some testimony by the witness that there were several acts committed during that time period. [¶] What this instruction basically means is that the jury must, all 12 jurors must agree on each and every act. Simple illustration, you might, if six of you were to say, well I think it happened in the spring, or in the fall, and the other six did not agree to that, you see, you have to agree on each act. [¶] I don't know whether I've explained it too well, but that instruction is somewhat confusing, in the sense that where we have a number of acts within a given time period, the jury must agree unanimously on each act. [¶] Each count charges a distinct offense. You must decide each count separately. The defendant may be found guilty or not guilty of any or all of the offenses charged. Every finding as to each count must be stated in a separate verdict."

[185 Cal.Rptr. 436, 650 P.2d 311].) If the evidence is such that a defendant, if guilty at all, was guilty of the greater offense, the lesser offense should not be given, even if requested. (*Id.* at pp. 323-326.)

 Here Callan was either innocent of the section 288 charges or he was guilty of the charges. It was his word against Angie's. Callan never admitted any unnatural or sexual interest in children which motivated his conduct toward Angie. Instead, he denied committing any sexually related acts upon Angie and argued any touching was accidental or innocent without sexual motivation of any kind. The giving of an instruction on misdemeanor child molestation, when not requested by Callan, would have been inconsistent with his defense. (*People* v. *Gordon, supra,* 165 Cal.App.3d at p. 864.) The court had no obligation to instruct on the lesser included offense as no evidence was presented the offenses were less than those charged. (*People* v. *Barrick* (1982) 33 Cal.3d 115, 135 [187 Cal.Rptr. 716, 654 P.2d 1243].)

## Conclusion

With the exception of count three, which we reverse, the judgment is affirmed.

Staniforth, Acting P. J., and Wiener, J., concurred.

Appellant's petition for review by the Supreme Court was denied March 19, 1986.