[No. B044899. Second Dist., Div. Two. Oct. 4, 1990.]

THE PEOPLE, Plaintiff and Respondent, v.
VINCENT DENIS, Defendant and Appellant.

COUNSEL

Ralph H. Goldsen, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Richard B. Iglehart, Chief Assistant Attorney General, Edward T. Fogel, Jr., Assistant Attorney General, Richard B. Cullather and Ernest Martinez, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

KLEIN (B.), J.*— A jury convicted appellant Vincent Denis of felony murder (Pen. Code, § 187) and attempted second degree robbery (Pen.

---

* Assigned by the Chairperson of the Judicial Council.

Code, §§ 664, 211), and found a principal was armed with a firearm in the commission of the crimes. (Pen. Code, § 12022, subd. (a).) Appellant then admitted four prior felony convictions, for one of which he had served a prior felony prison term. (Pen. Code, § 667.5, subd. (b).) He was sentenced to state prison for a term of 27 years to life. This appeal followed.

The evidence showed the following. On April 6, 1988, appellant, a drug dealer, was plying his trade near a street corner in South Central Los Angeles. After midnight, appellant averred he was "going to jack [steal from] every motherfucking one that moves." Soon thereafter, the victim, Johnny Johnson, stopped his taxicab at the scene to make a purchase. Kavin Rhodes, Yevette Comeaux, and appellant approached the cab for the ostensible purpose of filling Johnson's order. Johnson told Comeaux he wanted to make a $20 purchase. Rhodes pulled a handgun from his waistband and shot Johnson. Johnson attempted to drive away. Appellant, who had been leaning into the vehicle, was carried a short distance down the street; then he fell or jumped off. The cab collided with a pole several blocks away. Johnson's gunshot wound was fatal.

Investigating officers arrested appellant on April 29, but released him almost immediately. On May 12, appellant agreed to return to the station for further questioning. The interview was taped without appellant's knowledge, and later transcribed. Appellant waived his rights and told police the following. On the night of the shooting, prior to Johnson's arrival, Rhodes had solicited appellant's help in "jacking" customers. Appellant had replied his participation depended on the amount of money involved. Rhodes offered appellant his gun, but appellant declined. Shortly thereafter, Johnson appeared, and appellant approached, followed by Comeaux and Rhodes. Unaware Rhodes planned to rob Johnson, appellant heard Rhodes fire his gun only seconds after Rhodes asked Johnson how much money he had.

Appellant further admitted he and Rhodes had together robbed prospective purchasers at the same site on four or five previous occasions. Rhodes had never shot any of the victims. Appellant had, however, seen Rhodes shoot at a buyer on a different occasion.

At the end of the interview, appellant signed a written statement prepared by one of the interrogating officers.

At trial, the People offered the entirety of appellant's statement to the police. Defense counsel requested excision of the reference to appellant's participation in the prior robberies on the ground it constituted inadmissible evidence of appellant's propensity or disposition to commit the charged

offenses. The trial court denied the request, ruling appellant's admission he had been involved in prior robberies with Rhodes was probative of appellant's state of mind or intent at the time of the charged offense and was admissible for that limited purpose. Later the court denied appellant's motion for mistrial on the ground this evidence was improperly admitted.

Appellant testified as follows. Rhodes was unpredictably violent and was feared by appellant and most other people. He had not refused Rhodes's invitation to join in a robbery only because it seemed prudent to humor Rhodes; he had no intention of actually robbing anyone. He and Rhodes had committed several prior robberies together, one of which had yielded $500, but he had not been arrested for any of those robberies.

The jurors were instructed they could consider appellant's admission of the prior robberies for the limited purpose of determining his intent. (See CALJIC No. 2.50.) The court further instructed the jurors that "No person may be convicted of a criminal offense unless there is some proof of each element of the crime independent of any admission made by him outside of this trial." (See CALJIC No. 2.72.)

I.

■ Appellant's first contention is that the trial court erred in admitting that portion of his statement in which he admitted participating in several robberies with Rhodes.

■ Evidence of a defendant's other misconduct is, of course, inadmissible to prove his propensity or disposition to commit the crime charged. (Evid. Code, § 1101, subd. (a); *People v. Thompson* (1980) 27 Cal.3d 303, 314 [165 Cal.Rptr. 289, 611 P.2d 883]; *People v. Guerrero* (1976) 16 Cal.3d 719, 7249 [129 Cal.Rptr. 166, 548 P.2d 366]; *People v. Brogna* (1988) 202 Cal.App.3d 700, 706 [248 Cal.Rptr. 761]). Such evidence can nonetheless be admitted if it is logically, naturally, and by reasonable inference probative of motive, knowledge, identity, intent, opportunity, preparation, plan, or absence of mistake or accident (Evid. Code, § 1101, subd. (b); *People v. Tassell* (1984) 36 Cal.3d 77, 83-89 [201 Cal.Rptr. 567, 679 P.2d 1]; *People v. Guerrero, supra*, 16 Cal.3d at p. 724; see also *People v. Thompson, supra*, 27 Cal.3d at p. 316), unless the trial court determines, in its discretion, that the evidence should be excluded as unduly prejudicial, confusing, misleading, or time-consuming. (Evid. Code, § 352; *People v. Dellinger* (1984) 163 Cal.App.3d 284, 297 [209 Cal.Rptr. 503].)

**(1b)** Here, the evidence was properly admitted. Whether appellant intended to rob Johnson was the central disputed issue at the trial. Although

appellant admitted he attempted to sell Johnson drugs a moment before the fatal shooting, he vehemently denied he was a participant in Rhodes's robbery plan or that he otherwise intended to steal from Johnson.

As the cases have recognized, however, if a person acts similarly in similar situations, it can logically be inferred that he probably harbors the same intent in each instance. (*People* v. *Thompson, supra*, 27 Cal.3d at p. 319; *People* v. *Pendleton* (1979) 25 Cal.3d 371, 376-378 [158 Cal.Rptr. 343, 599 P.2d 649]; *People* v. *Schader* (1969) 71 Cal.2d 761, 777 [80 Cal.Rptr. 1, 457 P.2d 841]; *People* v. *Kelley* (1967) 66 Cal.2d 232, 242-243 [57 Cal.Rptr. 363, 424 P.2d 947].)

Appellant argues the prior robberies with Rhodes were irrelevant because they bore no distinctive similarities to the charged offense. To the contrary, the prior robberies were each perpetrated, at the same location, against potential drug purchasers. The fact that neither Rhodes nor appellant shot at anyone on those occasions hardly destroys the logical inference that appellant intended to rob Johnson also. In addition, a lesser degree of similarity is required to show intent than to show identity. (*People* v. *Robbins* (1988) 45 Cal.3d 867, 879-880 [248 Cal.Rptr. 172, 755 P.2d 355]; see *People* v. *Nible* (1988) 200 Cal.App.3d 838, 848-850 [246 Cal.Rptr. 119].)

We also reject appellant's contention the trial court abused its discretion by declining to exclude the evidence of the prior robberies as unduly prejudicial. Appellant's intent was the main disputed issue in the case, and the trial court could properly find the probative value of the evidence outweighed its potential for undue prejudice. Appellant having admitted he was a cocaine seller, and having been impeached by evidence of multiple felony convictions, the jury could scarcely have regarded him, in the absence of evidence of the prior robberies, as an honest and upright citizen.

## II.

### A.

■ In a separate petition for a writ of habeas corpus, appellant contends trial counsel rendered inadequate representation because, when objecting to the evidence of appellant's participation with Rhodes in other robberies, counsel failed to state as an additional basis for objection the absence of independent evidence of the corpus delicti of those robberies.

The basis for this contention is six opinions in which our Supreme Court has declared that the commission of a prior crime may not be proved by

evidence of the defendant's extrajudicial admission without independent proof such a crime was committed. (*People* v. *Williams* (1988) 44 Cal.3d 883, 910-911 [245 Cal.Rptr. 336, 751 P.2d 395]; *People* v. *Robertson* (1982) 33 Cal.3d 21, 41 [188 Cal.Rptr. 77, 655 P.2d 279]; *People* v. *Nye* (1969) 71 Cal.2d 356, 367 [78 Cal.Rptr. 467, 455 P.2d 395]; *People* v. *Quicke* (1969) 71 Cal.2d 502, 520 [78 Cal.Rptr. 683, 455 P.2d 787]; *People* v. *Hines* (1964) 61 Cal.2d 164, 174 [37 Cal.Rptr. 622, 390 P.2d 398]; *People* v. *Hamilton* (1963) 60 Cal.2d 105, 129, 131 [32 Cal.Rptr. 4, 383 P.2d 412].)

A close reading of those six decisions shows that a corpus delicti objection would have been unavailing in the case before us. Three of the decisions—*Nye, Hines,* and *Hamilton*—involved the penalty phase of capital cases, and stand for the unassailable proposition that the prosecution, in proving a defendant's commission of other offenses as an aggravating circumstance warranting imposition of the capital penalty, must prove the corpus of those other offenses. (See *People* v. *Terry* (1964) 61 Cal.2d 137, 143-145 [37 Cal.Rptr. 605, 390 P.2d 381].)

The other three decisions—*Quicke, Robertson,* and *Williams*—all proclaim the rule, but none applied it. In *Quicke* defendant had admitted the uncharged crimes in prior testimony; this was held not an "extrajudicial" admission. In *Robertson* the uncharged conduct was inadmissible because unduly prejudicial, so the court explicitly declined to pass judgment on the People's contention the corpus delicti rule is inapplicable when the evidence of the defendant's prior criminal acts is offered for the limited purpose of showing facts in issue, rather than for the purpose of proving the prior crime. (*People* v. *Robertson, supra,* 33 Cal.3d 21, 41-42.) In *Williams* the corpus delicti rule was held satisfied by independent evidence of the uncharged crimes. (*People* v. *Williams, supra,* 44 Cal.3d 883, 910-911.)

The corpus delicti rule has never been used to exclude evidence of prior crimes when offered not to prove that defendant committed them but rather solely for the limited purpose of showing defendant's state of mind at the time of the charged offense. Accordingly, we reject appellant's claim of ineffective assistance of trial counsel.

### B.

In passing, we confess to some doubt whether the corpus delicti rule as to uncharged offenses is as strong as enunciated in *Robertson*. There the court wrote, "California has long adhered to the rule, established at common law and followed in most jurisdictions, that 'evidence of the commission of a

prior crime may not be proved by the introduction of evidence of an extra-judicial admission without proof *aliunde* that such a crime had been committed.'" (*People* v. *Robertson, supra*, 33 Cal.3d 21, 41.) The court cited *Nye, Quicke, Hamilton*, and *People* v. *Cullen* (1951) 37 Cal.2d 614, 624 [234 P.2d 1]. The first three decisions we have already discussed; *Cullen* did not involve uncharged offenses at all.

The reference to the common law and most jurisdictions is one we have been unable to confirm. The corpus delicti rule itself is, of course, as old as the hills. (See 7 Wigmore, Evidence (Chadbourn rev. 1979) § 2070.) Any application of the rule to uncharged offenses is not, however, mentioned in the secondary sources. (See 7 Wigmore, *supra*, §§ 2070-2074, 2081; McCormick, Evidence (3d ed. 1984) §§ 145, 190; 2 Jefferson, Cal. Evidence Benchbook (Cont.Ed.Bar 1982 & 1990 supp.) §§ 33.1-33.8; 1 Witkin & Epstein, California Criminal Law (2d ed. 1988) §§ 136-142; 1 Witkin, Cal. Evidence (3d ed. 1986) §§ 356-379; Annots. (1940) 127 A.L.R. 1130, (1956) 45 A.L.R.2d 1316, (1965) 4 A.L.R.3d 671; Comment, *California's Corpus Delicti Rule: The Case for Review and Clarification*, 20 UCLA L.Rev. 1055; Imwinkelried, Uncharged Misconduct Evidence (1984) §§ 6.04, 6.19-6.20, 8.04, 9.21, 9.28-9.45, 9.49, 9.52-9.53.) Indeed, Imwinkelried, a professor at the University of California at Davis, quotes from *Williams* without mentioning its evocation of the corpus delicti rule. (Imwinkelried, *supra*, 1990 cum. supp., § 9.45, at p. 220.)

In addition, both Wigmore and McCormick question the need for the corpus delicti rule itself. (Wigmore, *supra*, § 2070, at p. 510 ; McCormick, *supra*, § 145, at pp. 370-371.) We are, therefore, unwilling to expand the rule to cover evidence of uncharged conduct, offered for a limited purpose under Evidence Code section 1101, subdivision (b).

### III.

■ Appellant's second assignment of error is the trial court's failure to instruct the jury, sua sponte, on the lesser included offenses of attempted theft or larceny. We find no error. The court has a duty to instruct on lesser included offenses only when the evidence raises a question whether all of the elements of the charged offense were present. (*People* v. *Lewis* (1990) 50 Cal.3d 262, 276 [266 Cal.Rptr. 834, 786 P.2d 892].) Appellant's argument is premised in part upon the speculative notion, refuted by the evidence, that the jury might have concluded he did not form the intent to steal until after Johnson was shot, and in part upon the alternative and inconsistent theory,

advanced for the first time on this appeal, that what he agreed to participate in was a simple theft from the person, not a taking by force.

The quantum of evidence necessary to support an instruction is more than just any evidence; it must be evidence substantial enough to merit consideration, that is, evidence from which a jury could reasonably conclude appellant was guilty of a simple theft. (*People* v. *Flannel* (1979) 25 Cal.3d 668, 684 [160 Cal.Rptr. 84, 603 P.2d 1].) Here, as in *Lewis, supra*, there was insufficient evidence to support a theft instruction. (See 50 Cal.3d at p. 277.) Appellant admitted he knew Rhodes was carrying a gun; he knew Rhodes had used the gun to take money from customers in the past; he knew Rhodes invited him to use the gun on this occasion; Rhodes in fact did use the gun. The record is devoid of evidence suggesting appellant believed Rhodes's plan excluded the use of force or fear.

Though in instructing a jury a court is not limited by the strategy of the parties, nevertheless it must consider what evidence has been adduced that might support a finding of guilt on a lesser offense, and it should not prejudice the defendant by giving sua sponte instructions inconsistent with his theory of the case. (See *People* v. *Wickersham* (1982) 32 Cal.3d 307, 323-326 [185 Cal.Rptr. 436, 650 P.2d 311]; *People* v. *Callan* (1985) 174 Cal.App.3d 1101, 1112-1113 [220 Cal.Rptr. 339]; *People* v. *Gordon* (1985) 165 Cal.App.3d 839, 864 [212 Cal.Rptr. 174].)

Here, appellant unequivocally denied taking part in the robbery. If his story was believed, he was not guilty of any offense. Appellant's defense was solely the prosecution's failure to meet its burden of proof, and he adduced no evidence, either in his own case or on cross-examination of the prosecution witnesses, that what was planned or attempted was a simple theft. (See *People* v. *Leach* (1985) 41 Cal.3d 92, 106 [221 Cal.Rptr. 826, 710 P.2d 893].)

## IV.

Finally, appellant contends, and the Attorney General concedes, that Penal Code section 654 required the trial court to stay execution of the sentence on the attempted robbery count, rather than merely ordering that sentence served concurrently. (See *People* v. *Mulqueen* (1970) 9 Cal.App.3d 532, 547 [88 Cal.Rptr. 235].) We will modify the judgment accordingly.

The judgment is modified to stay execution of the sentence imposed on count two (attempted robbery) pending completion of the sentence imposed on count one (first degree murder), at which time the stay shall become permanent. As modified, the judgment is affirmed.

Roth, P. J., and Gates, J., concurred.

Appellant's petition for review by the Supreme Court was denied January 4, 1991.