Filed 12/17/15  P. v. White CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E061932 |
| v. | (Super.Ct.No. SWF1400518) |
| MARTEZ DECARLOS WHITE, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Michael J. Rushton, Judge.  Affirmed in part; reversed in part with directions.

Joanna Rehm, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Eric A. Swenson, Kristine A. Gutierrez, and Lynne G. McGinnis, Deputy Attorneys General, for Plaintiff and Respondent.

1

I

INTRODUCTION

Defendant Martez Decarlos White appeals from judgment entered following jury convictions for residential burglary[1] and attempted residential burglary.[2]  Defendant waived a jury trial on his prior serious felony conviction allegation (nickel prior[3]) and prior strike conviction allegation (strike prior[4]), and admitted the allegations were true. The trial court sentenced defendant to 19 years and four months in state prison.

Defendant contends there was insufficient evidence to support his conviction on count 1 for residential burglary and the trial court abused its discretion in admitting evidence of his prior conviction for attempted residential burglary.  Defendant also asserts, and the People agree, the trial court erred in imposing on both counts the nickel prior enhancement, which can be imposed only once.  We affirm the judgment, with the exception of the sentencing error, in which the trial court imposed the nickel prior twice. Imposition of the nickel prior on count 2 is therefore reversed and ordered vacated.

---

[1] Penal Code section 459; count 1.  Unless otherwise noted, all statutory references are to the Penal Code.

[2] Sections 459 and 664.

[3] Section 667, subdivision (a).

[4] Sections 667, subdivisions (c) and (e)(1).

FACTS

**Count 1, the Martinson Burglary**

On January 15, 2014, Marty Martinson left his home on Val Verde Drive in Hemet. Martinson testified he left around 10:45 a.m., but other evidence, including the testimony of another witness, Michael Neal, indicates Martinson actually left his home around 1:30 p.m.

Upon returning home about 20 minutes later, Martinson noticed his front door had been kicked in, with the door jamb separated from the wall. The rear sliding glass door was open. Inside, he found his couch and chair cushions on the living room floor. His master bedroom had been ransacked. Martinson's Smith and Wesson revolver, which Martinson kept under the couch cushions, was gone. Martinson called 911. Around 1:30 p.m., Officer Derrick Young arrived at Martinson's home and spoke to Martinson about the burglary.

Meanwhile, at around 1:30 p.m., Michael Neal, who lived nearby on Val Monte Drive in Hemet, exited his garage with his dog to fix his sprinklers. He was startled to see "three tall black guys" standing in the street. They looked like teenagers. Neal wondered where they came from because there were no African American teenagers living on his block. As Neal kneeled down to fix his sprinklers, the three men walked by, turned around, and came back. Neal heard one of the men say, referring to Neal's home, "that will not be a good house. He's got a big dog." The young man became silent when

he saw Neal.  Neal's home was on the corner and around the block from Martinson's home.

After Neal finished fixing his sprinklers, he walked his dog around the block, onto Val Verde Street.  He noticed a couple of police cars and heard neighbors talking about a burglary.  The neighbors told him "three guys kicked [in] the back door" of the Martinson home.  Neal told the neighbors he thought he had "just seen them."  One of the neighbors took Neal to speak to Officer Young, telling Young that Neal had seen the three men.

Young testified that Neal said he not only saw the three teenagers walk by his house, he also saw them jump a backyard fence from Martinson's yard to a backyard on Val Monte.  Young confirmed it was unlikely Neal could have seen this.  Neal testified he had not seen the three men jumping the fence and did not recall telling the police this.

**Count 2, the Pando Burglary**

Shortly before 2:45 p.m., three young African-American men went to Esther Pando's home on Janae Way in Hemet.  Pando was not home.  A neighbor, Mattie Harris, who was home, heard a loud noise and called the police.  Harris testified that she saw the three men walk up to Pando's front door.  Harris heard a loud bang or boom that sounded like the men were kicking Pando's front door.  The three young men then went to the side and back of Pando's house.  Harris called 911 because she believed the men were breaking into Pando's house.  One of the men saw Pando on the phone.  The man was wearing a white T-shirt and tan colored Dickies.  Harris testified the three men were wearing pants, not shorts.  Harris was unable to identify defendant as one of the three men.

4

Harris's friend, Holly Benefield, was visiting Harris at the time. Benefield testified he saw a man go to the side and back of Pando's home. Benefield told officers he saw some kicked-up dust coming from Pando's backyard when the men fled. When Pando returned home, she discovered the screen covering her bedroom window, which was on the side of her house, had been removed. The screen was bent and in the side yard. Two batting gloves were found on the ground next to the screen.

Around 2:45 p.m., off-duty CHP officer, Michael Bell, who lived on Devonshire in Hemet, was awakened by his wife. She told him three people were in their backyard. Bell saw three tall Black men walking in a westerly direction through his backyard. It appeared the men came from his neighbor's yard to the east. The men were wearing baggy clothing. One man was wearing a baggy white T-shirt. The three men looked like they were headed toward Bell's back door.

Bell ran and grabbed his shotgun, which was in his garage. From a window in the back of the garage, he could see his backyard. He saw several "images pass by the window" in his garage. His wife was inside the house, next to the door to the garage. She told Bell it looked like the young men were going to the front yard. As she opened the garage door at Bell's request, Bell exited the garage and pursued the men. The men bounded over Bell's fence and separated, with Bell pursuing by foot two of the men who fled in a southeast direction. Defendant was one of the two men. When Bell ordered the two men to stop, defendant complied. His companion jumped the wall and continued on. Bell identified defendant in court as the person he apprehended. The third man fled in a southwest direction, toward Brandon Way.

5

Around 3:00 p.m., K-9 handler, Corporal Derek Maddox, took his dog, Roscoe, to a location near the corner of Devonshire and Brandon Way. Roscoe searched the parking lot of LA Fitness located half a block from Bell's home. Roscoe "alerted" Maddox to a bush in the parking area and retrieved a gun. The gun was a Smith and Wesson nine-millimeter, model 39-2, serial number A 431292. The gun was the same type of gun and had the same serial number as the gun stolen from Martinson.

Meanwhile, shortly after Young left Val Monte, Young received a radio call reporting an attempted break-in on Janae Way, followed by a report persons who matched the suspects' description were seen jumping a fence and running south from Devonshire. Young went to 3000 West Devonshire, where off-duty CHP officer Michael Bell was detaining defendant with a shotgun. Young took defendant into custody.

Officers told Neal they thought they had caught one of the young men who burglarized Martinson's home on Val Verde Drive. Neal was taken to where defendant had been apprehended and was asked if he could identify defendant as one of the men he had seen outside his home. Neal said he could not tell if defendant was one of the perpetrators because he did not look closely at the men while he was fixing his sprinklers. The officer asked Neal nevertheless to try. Neal looked at defendant and said, "yeah, that's one of them. Well I'm 75 percent sure." Neal acknowledged there was a 25 percent chance defendant was not one of the three men. Neal said defendant was dressed like one of the three men he had seen and his physical features were similar, with the same build and shape. Defendant was approximately the same height, some of his clothing appeared the same, and he was African-American. Also, the three men stood out

6

because there were not any other African-American men living on Neal's block, and they were standing in the middle of the street, instead of on the sidewalk.

Young testified Neal told him one of the men wore a white T-shirt and black basketball shorts and one wore a white T-shirt and blue basketball shorts. Neal did not know what the third man wore. Neal testified he did not tell any officer what the men were wearing, because Neal was not paying attention to the men's clothing when he saw the men. He recalled the men dressed pretty much the same. They were wearing bright T-shirts. Neal acknowledged that one of the men might have been wearing a white T-shirt.

Harris and Benefield were also taken to where defendant had been apprehended and asked if they could identify defendant. Harris said she was positive defendant was one of the men she saw enter Pando's backyard. Benefield was unable to identify defendant.

At the police station, after defendant waived his *Miranda*[5] rights, defendant said he was in Pando's backyard but was not there in connection with breaking into any home. Defendant said he had met friends at a nearby Rite Aid and they had planned to go to the home of the mother of one of his friends. Since the mother was not home, they went into Pando's backyard to smoke marijuana. One of his friends was named Grimey. Defendant said he was unable to provide any other information about his friends. Defendant said he fled because he knew Grimey had a stolen gun in his pocket and this

[5] *Miranda v. Arizona* (1966) 364 U.S. 436.

7

was a violation of defendant's parole. Defendant also knew he was "wanted." Defendant said he did not know anything about the burglary on Val Verde. Young testified defendant was not in possession of any marijuana and did not smell like marijuana.

**Prior Conviction for Attempted Residential Burglary**

Over defense counsel's objection, the prosecution entered evidence of defendant's 2013 conviction for attempted residential burglary. Ezzat Yacob testified that on December 23, 2012, around 8:25 a.m., four men attempted to burglarize his house on Pine White Road in Hemet, while he and his wife were home. One of the men was trying to kick in the front door. The other three men jumped the fence into Yacob's backyard and the other man joined them as they went to the back door. The men were about to break down the back door but, when they saw Yacob point to his wife, who was calling the police and screaming, the men jumped back over the fence and ran away. Later, the police told Yacob the police had arrested the men. Yacob was taken to an in-field show-up and identified as the perpetrators the men shown to him. During the trial in the instant case, Yacob was unable to identify defendant as one of the four perpetrators. The jury was told, as stipulated by the prosecutor and defense counsel, that "[O]n January 3rd, 2013, Martez Decarlos White, pled guilty [¶] . . . to one count of attempted residential burglary . . . , admitting that on or about December 23rd, 2012, he attempted to enter a home located at 4595 Pine White Road in Hemet with the intent to commit theft."

III

SUFFICIENCY OF EVIDENCE SUPPORTING COUNT 1 CONVICTION

Defendant contends there was insufficient evidence he committed the burglary of

8

Martinson's home, charged in count 1.  Defendant argues the evidence did not establish that he was one of the burglars.

"When an appellant challenges a criminal conviction based on a claim of insufficiency of the evidence, 'the reviewing court's task is to review the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence—that is, evidence that is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' [Citations.]  'Resolution of conflicts and inconsistencies in the testimony is the exclusive province of the trier of fact.  [Citation.]  Moreover, unless the testimony is physically impossible or inherently improbable, testimony of a single witness is sufficient to support a conviction.' [Citation.]" (*People v. Ortiz* (2012) 208 Cal.App.4th 1354, 1362 (*Ortiz*).)

The reviewing court must determine "'whether a *reasonable* trier of fact could have found for the respondent based on the *whole* record.' [Citation.]  '[T]he power of an appellate court *begins* and *ends* with the determination as to whether, *on the entire record,* there is substantial evidence, contradicted or uncontradicted, which will support the determination, and when two or more inferences can reasonably be deduced from the facts, a reviewing court is without power to substitute its deductions for those of the trial court. *If such substantial evidence be found, it is of no consequence that the trial court believing other evidence, or drawing other reasonable inferences, might have reached a contrary conclusion.*' [Citation.]" (*Ortiz, supra,* 208 Cal.App.4th at p. 1363.)

A residential burglary conviction requires substantial evidence of entry into a home with intent to commit a theft or felony.  (§ 459; *People v. Anderson* (2009) 47

9

Cal.4th 92, 101.) We conclude there was overwhelming evidence defendant perpetrated the Martinson burglary. Such evidence includes Neal's statements to Officer Young and testimony he saw three men at about the same time as the burglary of Martinson's home. Neal lived around the corner from the Martinson home. In addition, Neal heard one of the three men make a statement, while passing Neal's home, indicating the men were contemplating burglarizing Neal's home but rejected doing so because Neal had a big dog. The clothing defendant was wearing when apprehended was similar to the clothing Neal told Young the three men were wearing, and Neal identified defendant at an in-field identification as one of the three men he had seen. Neal said he was 75 percent certain of his identification of defendant.

Additional evidence supporting defendant's Martinson burglary conviction includes evidence of defendant's count 2 conviction for attempted burglary of Pando's home, which was about three and a half miles from Martinson's home. Defendant does not contest the sufficiency of evidence of his count 2 conviction. The burglary was committed about an hour after the Martinson burglary. Pando's neighbor, Harris, saw three men at Pando's front door and heard them attempting to kick in the door. When unsuccessful, they went to the side and back of Pando's home, and tried to break in. The circumstances of the Pando attempted burglary are similar to those of the Martinson burglary. Also, Harris identified defendant as one of the men in Pando's backyard who tried to break in. Although defendant denied involvement in the Pando burglary, he admitted he was in Pando's backyard with his friends. Defendant also admitted one of his friends had a stolen gun, and that defendant fled because he was "wanted" and had

10

violated his parole by associating with someone with a stolen gun.

Bell's testimony and identification of defendant provided additional evidence supporting defendant's conviction for the Martinson burglary. Bell testified that around the time of the Pando burglary, he saw three men, including defendant, at his home in the backyard. It appeared that the men were going to break into Bell's home. Bell caught defendant and identified him as one of the three men. The other two men ran away and shortly thereafter, Martinson's stolen gun was found nearby in a bush, leading to the reasonable inference that defendant and his two companions committed the Martinson burglary and one of defendant's two companions discarded the stolen gun in the bush.

Defendant argues Neal's identification of defendant as a perpetrator was unreliable because Neal was only 75 percent certain defendant was a perpetrator. But the degree of certainty of a witness's identification goes to the weight of the evidence, which is a factual determination for the jury. "'Apropos the question of identity, to entitle a reviewing court to set aside a jury's finding of guilt the evidence of identity must be so weak as to constitute practically no evidence at all.' ([Citations]; see also *In re Gustavo M.* (1989) 214 Cal.App.3d 1485, 1497 [when the circumstances of an eyewitness identification and its weight are explored at trial and the trier of fact believes the eyewitness identification, the trier of fact's determination is binding on the reviewing court].)" (*People v. Mohamed* (2011) 201 Cal.App.4th 515, 521.) Although defendant argues certain facts and evidence support a finding of innocence, this court cannot reweigh the evidence. We must affirm the judgment if there is substantial evidence

11

supporting it.  (*Ortiz, supra,* 208 Cal.App.4th at p. 1363; *People v. Manibusan* (2013) 58 Cal.4th 40, 87.)

Here, the totality of the evidence, as discussed above, is more than sufficient to support defendant's conviction for the Martinson burglary.  Furthermore, evidence of defendant's prior attempted burglary in December 2012 provided additional support, since the 2012 attempted burglary was committed in a similar manner as the Martinson burglary.  Defendant and three companions committed the 2012 crime during the day time by attempting to kick in the front door.  At an in-field show-up, the owners of the home, Yacob and his wife, identified defendant and his companions as the perpetrators of the 2012 attempted burglary and defendant pled guilty to the crime.

IV

ADMISSIBILITY OF PRIOR ATTEMPTED BURGLARY CONVICTION

Defendant contends the trial court abused its discretion and denied him due process in admitting under Evidence Code section 1101, subdivision (b), evidence of his prior 2013 conviction for attempted burglary committed in December 2012 (2012 prior).  Defendant argues the trial court should have excluded this evidence because it was irrelevant (Evid. Code, § 350), constituted inadmissible character evidence (Evid. Code, § 1101), and its probative value was substantially outweighed by the potential for undue prejudice (Evid. Code, § 352).

A.  *Procedural Background*

The prosecution filed a motion in limine (MIL) seeking to admit evidence of defendant's prior uncharged acts pursuant to Evidence Code section 1101, subdivision

12

(b). Specifically, the prosecution sought to introduce evidence of attempted burglary in December 2012, of the Yacob home. The prosecution argued the evidence was admissible to prove the elements of the charged burglary offenses. As to count 2, the prosecution sought to present the evidence to establish defendant attempted to enter Pando's home with intent to steal, and also to show an absence of accident or mistake. The prosecution noted that defendant had provided a statement to the police in which defendant denied having anything to do with the charged burglaries. Defendant had stated he and two friends went into Pando's backyard merely to smoke marijuana, and he fled because defendant was violating his parole by associating with his friend, Grimey, who was in possession of a stolen gun.

The prosecution stated in its MIL that it believed defendant would argue that defendant was not at the scene of the Martinson burglary (count 1) and that defendant had told the police that, although he was in the Pando's backyard with friends, he was not there with the intent to enter Pando's home and steal. The prosecution asserted that the evidence of defendant's 2012 prior was therefore highly probative of the issue of defendant's intent.

Defendant filed a MIL seeking to exclude any evidence of his criminal history under Evidence Code section 1101, subdivision (b), on the ground the prosecution had not provided any discovery regarding the facts of defendant's 2012 prior. Defendant also argued the evidence should be excluded under Evidence Code section 352, as unduly prejudicial.

13

During the hearing on the parties' MILs, the trial court ruled that, unless defendant sought to introduce defendant's statement to the police, the statement would be excluded (including defendant's statement he and his friends intended to smoke marijuana in Pando's backyard). The court warned that if the prosecution chose to introduce portions of the statement, the entire statement could come in.

Defense counsel objected to the prosecution's MIL to introduce evidence of defendant's 2012 prior on the ground no discovery was provided regarding the prior and defense counsel had not been given a copy of the police report. The prosecutor said the report was emailed a few days ago and had been provided during the initial discovery. Upon checking defense counsel's email, she acknowledged she had received the police report. The trial court stated its tentative was to grant the prosecution's MIL under Evidence Code section 1101, subdivision (b), and admit the evidence. Defense counsel stated that her only objection was that the evidence should be excluded as unduly prejudicial under Evidence Code section 352.

The trial court stated it was granting the prosecution's MIL motion based on the rationale stated in the prosecution's MIL brief. The court explained that the burglary technique used by defendant and his companions in committing the 2012 prior was very unique and extremely distinctive. The court noted: "I've really never come across a case where a group of guys, effectively, bum-rush a house. It's a very unusual burglary technique where people in mass, during the daytime, bang on doors to see if people are home and then seek to make forcible entry into the house. [I]t may happen on a regular

14

basis, but it seems to be a rather distinctive method of burglarizing or attempting to burglarize a house."

The court concluded this method was similar to that used in the charged offenses. Therefore evidence of the 2012 prior offense conduct was admissible as to count 2 to prove common plan or scheme, intent, and absence or mistake or accident, the court added that the evidence was extremely probative, such that allowing the evidence would not run afoul of Evidence Code section 352. The court also found the probative value of the 2012 prior evidence substantially outweighed any danger of undue prejudice, confusing the issues, or misleading the jury. The trial court stated that it was reserving ruling on whether the 2012 prior itself would be admitted and whether the evidence was admissible as to count 1 but ruled evidence of the underlying conduct would be permitted for the limited purposes stated as to count 2. The next day, the trial court stated that the admission of evidence of the 2012 prior was limited to count 2. During the trial, the prosecutor introduced evidence of the 2012 attempted burglary offense. The jury was instructed that the prior crime evidence was admissible solely on count 2, as to defendant's intent and common plan, and could not be considered as to count 1.

## B. Applicable Law

Evidence Code section 1101, subdivision (a), generally provides, with a few inapplicable exceptions, that evidence of a person's character or a character trait is inadmissible when offered to prove the person's conduct on a specified occasion. But, Evidence Code section 1101, subdivision (b), provides that nothing in Evidence Code section 1101 prohibits the admission of evidence that a person committed a crime "when

15

relevant to prove some fact (such as motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident . . .) other than his or her disposition to commit such an act." (Evid. Code, § 1101, subd. (b); see *People v. Catlin* (2001) 26 Cal.4th 81, 111.)

In order for evidence of an uncharged prior crime to be relevant on the issue of identity, the uncharged crime must be highly similar to the charged offenses. (*People v. Catlin, supra,* 26 Cal.4th at p. 111.) "In order to be relevant as a common design or plan, 'evidence of uncharged misconduct must demonstrate "not merely a similarity in the results, but such a concurrence of common features that the various acts are naturally to be explained as caused by a general plan of which they are the individual manifestations."'" (*Ibid.*) "'[T]he common features must indicate the existence of a plan rather than a series of similar spontaneous acts,' and that 'evidence that the defendant has committed uncharged criminal acts that are similar to the charged offense may be relevant if these acts demonstrate circumstantially that the defendant committed the charged offense pursuant to the *same* design or plan he or she used in committing the uncharged acts.' [Citation.]" (*Ibid.*) "'The least degree of similarity (between the uncharged act and the charged offense) is required in order to prove intent. [Citation.].'" (*People v. Kelly* (2007) 42 Cal.4th 763, 783.)

Even if evidence of a prior crime is admissible under Evidence Code section 1101, Evidence Code section 352 provides that the court in its discretion may exclude evidence "if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue

prejudice, of confusing the issues, or of misleading the jury."

We review trial court rulings made under Evidence Code sections 1101 and 352 for an abuse of discretion. (*People v. Jefferson* (2015) 238 Cal.App.4th 494, 502.) Under this standard of review, we will not reverse the trial court's ruling unless the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner, resulting in a manifest miscarriage of justice. (*Ibid.*, quoting *People v. Foster* (2010) 50 Cal.4th 1301, 1328-1329.)

*C. Discussion*

Citing *People v. Perkins* (1984) 159 Cal.App.3d 646 (*Perkins*), defendant argues the trial court erred in admitting evidence of the underlying conduct of defendant's 2012 prior for attempted residential burglary. Defendant argues that at the time of the trial court's ruling on the prosecution's motion in limine to introduce evidence of the 2012 prior, defendant had not put at issue his criminal intent, knowledge or motive, as to count 2. Therefore under *Perkins*, it was improper to grant the prosecution's motion in limine allowing evidence of the 2012 prior.

In *Perkins*, the defendant was convicted of burglary. During the trial, the People attempted to introduce evidence of a prior conviction to show the defendant's intent and knowledge under Evidence Code section 1101, subdivision (b). The court explained that three factors should be considered in determining the admissibility of an uncharged offense: "(1) the *materiality* of the fact sought to be proved or disproved; (2) the *tendency* of the uncharged crime to prove or disprove the material fact; and (3) the existence of any *rule* or *policy* requiring the exclusion of relevant evidence." (*Perkins,*

17

*supra,* 159 Cal.App.3d at p. 651, quoting *People v. Thompson* (1980) 27 Cal.3d 303, 315.)

In *Perkins*, the court concluded that, because the defendant did not place at issue the ultimate facts of intent and knowledge, evidence of uncharged offenses was inadmissible. (*Perkins, supra,* 159 Cal.App.3d at p. 651.) The *Perkins* court explained: "In the instant case, the motion to admit the uncharged offense was made in limine, and was the first item disposed of by the trial court. No argument had been heard from either Perkins' attorney or counsel for codefendant Wilson that would have brought knowledge or intent into dispute. Therefore the granting of the motion was error." (*Id.* at p. 652.)

The *Perkins* court suggested that, "To reduce the possibility that an uncharged offense will be admitted to prove an element of the crime before that element is placed in issue, trial judges are advised to follow the procedure used by the trial judge in *People v. Scott* [(1980)] 113 Cal.App.3d 190." (*Perkins, supra,* 159 Cal.App.3d at p. 652.) That recommended procedure consists of the trial court instructing the prosecutor to avoid reference to an uncharged offense in the case in chief, but if the defense places any ultimate facts into issue, the trial court can then consider allowing the prosecutor to use an uncharged offense in rebuttal. (*Ibid.*) In *Perkins*, neither the defendant nor his codefendant made an opening statement or presented a defense. Therefore, neither defendant brought into issue an element of the charged offenses.

The *Perkins* court noted that, although defense counsel addressed the defendant's lack of knowledge in closing argument, by that time he was merely refuting the improper inferences raised by the admission of the uncharged offense. (*Perkins, supra,* 159

18

Cal.App.3d at p. 652.) The *Perkins* court therefore concluded the trial court erred in admitting into evidence the uncharged offense. (*Ibid.*) Nevertheless, the court found that its admission was harmless error on the ground the evidence against the defendant, absent the uncharged offense, was overwhelming. (*Ibid.*) Therefore the court concluded that, in the absence of the contested evidence, there was no reasonable probability that a result more favorable to the defendant would have been reached. (*People v. Watson* (1956) 46 Cal.2d 818, 836.)

*Perkins* is not on point because intent was not undisputed. Defendant admitted during his statement to the police that he was in Pando's backyard solely for the purpose of smoking marijuana. Although the trial court ruled the statement could not come in as evidence unless defendant introduced it, there remained the possibility defendant would introduce the evidence or refute intent in some other way. The prosecution was still required to prove intent and that defendant participated in the Pando attempted burglary. (*People v. Rowland* (1992) 4 Cal.4th 238, 260.) The 2012 prior was highly probative in showing that defendant was involved in the burglary and intended to break into the Pando home with intent to steal. Furthermore, even if there was error in allowing evidence of the 2012 prior, it was harmless error because there was overwhelming evidence defendant committed both charged crimes.

Defendant argues the prior evidence was duplicative, unnecessarily cumulative evidence of intent, since there was already evidence three African American men were seen attempting to break into the Pando home midday by trying to kick in the front door and then when that effort failed, attempting to enter through a side window. The men left

19

gloves and a removed screen on the ground and fled when it appeared a neighbor was calling the police. Defendant also argues the evidence was prejudicial, particularly as to count 1, and rendered defendant's trial fundamentally unfair, in violation of his constitutional right to due process. We disagree.

Evidence of the 2012 prior was admissible to show common plan or scheme and did not constitute overly cumulative evidence. Both the 2012 prior and the Pando burglary circumstances were similar in that they were both perpetrated by a group of three or four young African American men, who walked up to the homes and attempted to break into the homes during the daytime, by attempting to kick in the front door. When unsuccessful, the men then went to the side or back of the home and attempted to break in. When the men became aware someone was observing them and calling the police, the men fled. Furthermore, defendant committed the 2012 prior not long before the charged crimes (13 months before) and both the charged crimes and the 2012 prior were committed in Hemet. The circumstances of the 2012 prior and Pando burglary were not identical but sufficiently relevant and similar for purposes of admitting the evidence to show intent and common plan or scheme.

The highly probative and relevant evidence of the 2012 prior was not outweighed by any undue prejudice under Evidence Code section 352. Furthermore, any prejudice was sufficiently countered by the trial court's jury instructions limiting consideration of the evidence to count 2 and to the issues of common plan or scheme and intent. The trial court did not abuse its discretion in allowing evidence of defendant's 2012 prior, and admission of the evidence did not violate defendant's due process rights because the

20

evidence was properly admitted.

V

IMPROPER IMPOSITION OF FIVE-YEAR ENHANCEMENT ON COUNT 2

Defendant contends, and the People agree, the trial court erred in imposing defendant's nickel prior on count 2, when the same nickel prior was also imposed on count 1. The nickel prior is defendant's prior serious felony strike conviction for attempted residential burglary in 2012. Status enhancements, such as the nickel prior imposed under section 667, subdivision (a), can be imposed only once to a determinate sentence. Therefore the trial court erred in imposing the nickel prior both to count 1 and count 2, and the five-year nickel prior must be vacated as to count 2. (*People v. Sasser* (2015) 61 Cal.4th 1, 16-17.)

VI

DISPOSITION

The judgment is affirmed, with the exception imposition of the nickel prior on count 2 (§ 667, subd. (a)) is reversed and ordered vacated, because the trial court incorrectly imposed the nickel prior twice.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON
J.

We concur:

KING
Acting P. J.


MILLER
J.

21